Robert S. SOMERVILLE, Plaintiff,

v.

MAJOR EXPLORATION, INC., Major Drilling, Inc., United American Energy, Inc., Robert J. Tonachio, Rea J. Tonachio, Gerald P. Murphy, Thomas F. Murphy, Michael W. McCown, Charles J. Parks, Frank W. Hall, Fittin, Cunningham & Lauzon, Inc., Joseph Lauzon, Thomas Fittin, Arnheim & McCostis, Robert M. Hurwitz, O.L. Walter Co., Lanny R. Freeman, Freeman Energy, Inc., Freeman Exploration, Inc., William J. Kabboord, Curtis D. Robert, and All State Energy, Inc.

No. 82 Civ. 7328 (RLC).

United States District Court,
S.D. New York.

Nov. 17, 1983.

Kass, Goodkind, Wechsler & Labaton, New York City, for plaintiff; John Steel, Stuart D. Wechsler, Joseph H. Weiss, New York City, of counsel.

Hugh L. Scott, Jr., San Antonio, Tex., for defendants Major Exploration, United American Energy, Inc. Major Drilling, Inc., Robert J. Tonachio, Rea J. Tonachio, Michael W. McCown, Gerald P. Murphy, Thomas F. Murphy, Frank W. Hall.

D'Amato & Lynch, New York City, for defendant Arnheim & McCostis; Robert E. Meshel, New York City, of counsel.

McPherson & Blevins, Kingston, Tenn., for defendant Charles J. Parks; Jack H. McPherson, Jr., Kingston, Tenn., of counsel.

Torre & Garman, East Rutherford, N.J., for defendants Fittin, Cunningham & Lauzon, Inc., Thomas Fittin and Joseph Lauzon; Harry L. Garman, East Rutherford, N.J., of counsel.

Arnoff & Merin, New York City, for defendant O.L. Walter & Co.; Norman B. Arnoff, New York City, of counsel.

Lanny R. Freeman, pro se.

Owen & Fennell, New York City, for defendant Curtis B. Robert; Robert D. Owen, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, Robert S. Somerville, sues on behalf of himself and all other persons [1] (except defendants and those in privity with them) who purchased the securities of Major Exploration, Inc. ("Major"), Major Drilling, Inc. ("Major Drilling"), and United American Energy, Inc. ("United")—all defendants in this case. The defendant corporations, their officers and directors, their attorneys, Arnheim and McCostis, their accountants, G.L. Walter Co. ("Walter"), their underwriting firm, Fittin, Cunningham & Lauzon, Inc. ("Fittin") and its officers and attorney, and a set of individual and corporate entities defined as the Freeman Group, are all charged with fraud. Specifically, plaintiff's complaint alleges violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); §§ 12(1), 12(2), and § 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77*l* (1), 77*l* (2), and § 77q; § 901 of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1961 *et seq.;* common law fraud pursuant to pendent jurisdiction; §§ 339–a and 352–c of the General Business Law and § 1611 of the Business Corporation Law of the State of New York; breach of common law fiduciary obligations to plaintiff and members of the class; and breach of contractual duties owed to plaintiff and the class.[2]

---

1. Plaintiff's class certification motion is currently pending before this Court.

2. Plaintiff charges all defendants with these violations, except the following defendants are excluded from certain counts: Walter is not

Plaintiff contends United, Major, and Major Drilling were organized and promoted for the purpose of defrauding the public by successive public offerings based upon fraudulent financial statements and deceptive press releases, thereby inflating the price of the companies' securities. As a result of fraudulent representations and omissions in a scheme to sell the securities of the three companies, plaintiff claims millions of dollars were lost by the public.

United, a Tennessee corporation, organized in 1978, is headquartered in San Antonio, as are Major and Major Drilling. United owns a majority interest in Major, a Colorado corporation, that, in turn, wholly owns Major Drilling, also a Colorado corporation. Defendants maintain that the three companies were organized to engage in exploration for potential new oil and gas properties and the exploitation of such new, as well as existing properties, with various drilling and production programs.

Several motions are now before the Court. Defendants United, Major, Major Drilling, their officers and directors ("the Major group") have filed a motion to dismiss the complaint pursuant to F.R.Civ.P. 9(b) for failing to state any claim with sufficient particularity. In the alternative, the Major Group has moved to transfer the case to the Western District of Texas pursuant to 28 U.S.C. § 1404(a).[3] Defendants Fittin, Thomas Fittin and Joseph Lauzon have joined in these motions. Defendant

Walter has joined in the Rule 9(b) motion and, in addition, has moved pursuant to Rule 12(b)(6), F.R.Civ.P. to dismiss Count V of the complaint, which charges defendants with violation of RICO. Curtis D. Robert, allegedly a member of the Freeman group, has filed a separate motion to dismiss the complaint.[4] Robert maintains that plaintiff has failed to state a claim, or to provide him with minimum notice because the pleadings are insufficient under Rule 9(b). He joins, as well, in the Major group's motion to transfer.

## I. *Venue*

 Motions to transfer, pursuant to 28 U.S.C. § 1404(a) are directed to the discretion of the Court. *Wyndham Associates v. Bintliff,* 398 F.2d 614, 621 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968).[5] In this Circuit, the factors which are decisive in deciding whether transfer is warranted are: (1) the convenience of the parties and witnesses (and the availability of process to compel attendance of unwilling witnesses); (2) the relative ease of access to sources of proof, and other practical problems that make trial of a case easy, expeditious, and inexpensive; and (3) the interests of justice. *Y⁴Design, Ltd. v. Regensteiner Public Enterprises,* 428 F.Supp. 1067, 1068–69 (S.D.N.Y.1977) (Bonsal, J.), *citing Schneider v. Sears,* 265 F.Supp. 257 (S.D.N.Y.1967)

---

charged with violation of sections 12 and 12(2) of the Securities Act of 1933, and Lanny Freeman and the Freeman Group are not charged with violation of the former section of the Act. Only the Major group is charged with violation of contractual duties owed to plaintiff and the class.

3. Charles Parks, who was an officer of Major, Major Drilling and United, and a member of their board of directors until June 10, 1982, has separately submitted his motion which requests, in addition to transfer and Rule 9(b) dismissal, dismissal of the case for failure to state a claim.

4. Lanny Freeman has filed an affidavit on behalf of himself Freeman Energy, Inc. and Freeman Exploration, Inc. (which no longer exists), joining in the Major group's motion to transfer the action to Texas.

5. Section 1404(a) of Title 28 of the United States Code provides that:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

All defendants except Curtis Robert concede that venue is proper in the Southern District of New York. Robert's objection to venue in this district is without merit. Venue is proper in any district "wherein any action or transaction constituting the violation occurred." 15 U.S.C. § 78aa. The complaint alleges that a material portion of the fraud and securities law violations took place and has had a substantial impact in New York.

(Weinfeld, J.). Each of these factors will be examined in turn.

### A. The Convenience of the Parties and Witnesses

In large part, defendants' arguments for a change of venue concern the location of parties and witnesses involved in this dispute. The majority of the named defendants, both corporate and individual, are located in Texas. The three companies, their officers and directors, and the members of the Freeman group, totaling nine individuals, are located in Texas. A substantial number of defendants, however, live or work in the Southern District of New York, or in the vicinity. Defendant, Gerald Murphy, who is and has been chairman of the Board of Directors of Major, Major Drilling and United, and defendant, Robert Hurwitz, live or work in the Southern District of New York. Defendant, Arnheim & McCostis,[6] a law firm, has its principal place of business in Manhattan, and so does the accounting firm of defendant, Walter. Finally, defendant, Fittin, and two of its officers and board members, who are also defendants, maintain their residences or business locations in New Jersey.

Defendants assert that New York is an inconvenient forum because the businesses of the corporations located in Texas will be disrupted by litigation requiring their officers to be present in New York. It is an inconvenient forum with respect to the witnesses in the case, defendants maintain, because it is likely that most of them will be from Texas, and it is more likely that they will be subject to compulsory process there than in New York. Defendants further contend that they would be prejudiced if they were required to resort to deposition testimony since credibility is critical in cases involving fraud.

■ Were numbers alone indicative of inconvenience, defendants would have a strong case indeed. Defendants cannot, however, argue for transfer simply by pointing to the number of defendants who

reside in Texas without a concomitant showing of who will be called, or what their testimony might be. *Kreisner v. Hilton Hotel, Corp.*, 468 F.Supp. 176, 178 (E.D.N.Y.1979). It is very unlikely that all of the individual defendants who are officers and directors of the Major group will prove essential to the case, as their testimony will undoubtedly overlap. Moreover, since two Major group defendants, McCown and Parks, are no longer officers or directors in the companies, their absence could hardly disrupt defendants' business. Where, as here, a substantial number of defendants reside in the district where the case is pending, nothing less than a strong showing of actual inconvenience will suffice to sustain a motion for transfer.

■ Although defendants contend that they will have difficulty compelling the attendance in New York of various witnesses from Texas with expertise in oil and gas exploration, they fail to identify any specific witnesses so affected. On the contrary, there is no reason given that would prevent defendants from requiring the experts whom they employ or engage to come to New York to testify. In addition, while it is true that deposition testimony is generally unsatisfactory in fraud cases where credibility takes on added importance, *Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257, 260 (S.D.N.Y.1974) (Ward, J.), the use of discovery techniques such as videotaped depositions can make demeanor evidence available to a jury even when witnesses are not physically present at trial. *Bolton v. Tesoro Petroleum. Corp.*, 549 F.Supp. 1312, 1317 (E.D.Pa.1982).

### B. The Relative Ease of Access to Sources of Proof

■ Defendants allege that Texas is the site of the relevant documents and records, and it would be less costly to hold the trial where duplication and transportation of those documents is unnecessary. Plaintiff simply challenges as unfounded defendants' estimations of costs.

---

**6.** Defendant Arnheim and McCostis has filed an affidavit opposing transfer of this case.

Defendants have not demonstrated, as they must, that the transportation and production of documents would be unduly burdensome. *S-G Securities, Inc. v. Fuqua Inv. Co.*, 466 F.Supp. 1114, 1123 (D.Mass. 1978). They do not identify the needed documents. Their assertions are thus unsubstantiated and cannot be given serious consideration. *See Blender v. Sibley*, 396 F.Supp. 300, 303–304 (E.D.Pa.1975). Since material portions of the fraud and securities violations allegedly occurred in New York and involved misrepresentations made by certain defendants located in New York and New Jersey, it seems likely that a number of relevant documents will be based in New York.

### C. The Interests of Justice

Defendants highlight the fact that a similar case to the one before this Court, *United Am. Energy, Inc. v. F.X.C. Investors & Curzio*, is pending before the Western District of Texas.[7] The existence of a related action in the transferee district is a strong factor to be weighed in the interest of judicial economy. *Dow Jones & Co., Inc. v. Board of Trade of Chicago*, 539 F.Supp. 190, 192 (S.D.N.Y.1982) (Carter, J.); *Austin v. Johns-Manville Corp.*, 524 F.Supp. 1166, 1169 (E.D.Pa.1981). It appears, however, that here the pendency of a suit in Texas contributes only marginal support for a transfer there. The action in Texas has been stayed pending the Court's decision here, and if this case proceeds here, the Court will not be duplicating work already accomplished by the Texas court.

Finally, the Court rejects defendants' contention that deference to plaintiff's choice of forum is not warranted in this case, since plaintiff has no material connection with the Southern District, and the class plaintiff seeks to represent cannot supply such a connection. It is true that where a plaintiff seeks to represent a class that is widely dispersed, plaintiff's choice of forum becomes a less weighty factor in determining whether transfer is warranted. *Helfant v. Louisiana & Southern Life Ins. Co.*, 82 F.R.D. 53, 57–58 (E.D.N.Y. 1979). However, since this action was brought pursuant to the Securities Exchange Act, and the venue provision of the Act is designed to allow the plaintiff the widest possible choice of forums, *S-G Securities, Inc. v. Fuqua Inv. Co., supra*, 466 F.Supp. at 1122, the fact that plaintiff seeks to represent a widely dispersed class takes on less significance than might otherwise be the case.

Moreover, the rule in this Circuit is that plaintiff's choice of forum will not be disturbed unless the movant shows that the balance of convenience and justice weighs heavily in favor of transfer. *Richardson Greenshields Securities, Inc. v. Metz*, 566 F.Supp. 131, 134 (S.D.N.Y.1983) (Sweet, J.); *Bankers Trust Co. v. Santos Suarez*, 526 F.Supp. 1262, 1264 (S.D.N.Y. 1981) (Brieant, J.). No such showing has been made. Accordingly, the motions for a change of venue are denied.[8]

### II. Rule 9(b), F.R.Civ.P. Motions

Defendants in the Major group object to the fraud allegations in the complaint on two grounds. First, they contend that most of the allegations are based on information and belief insufficiently supported by particular facts. Second, they urge the Court to dismiss the complaint because it charges fraud against "all defendants" without specifying the role, if any, of each. The latter point is reiterated by defendants Walter, Fittin, Lauzon, Thomas Fittin, and Robert.

Rule 9(b) requires plaintiff to plead facts giving rise to an inference of

---

7. That case was filed in September, 1982, shortly before this one. The main action, which concerns, *inter alia*, a claim for libel is not similar to the case here, but the third-party complaint contains allegations very close to those in this case, and is also brought against most of the defendants here.

8. Insofar as other defendants in this action have joined the Major group's motion for transfer, their motions are also denied.

fraud and to state these facts with sufficient particularity, to apprise defendants of the misconduct complained of and to enable them to prepare a defense.[9] *Posner v. Coopers & Lybrand,* 92 F.R.D. 765, 768 (S.D.N.Y.1981) (Goettel, J.), *aff'd,* 697 F.2d 296 (2d Cir.1982), *citing Denny v. Barber,* 576 F.2d 465 (2d Cir.1978). The irreparable damage to reputations and goodwill, which inevitably results from charges of fraud, and the threat of baseless strike suits are ample reasons for careful judicial review of claims alleging fraud. *Decker v. Massey-Ferguson-Ltd.,* 681 F.2d 111, 115 (2d Cir. 1982); *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972). Rule 8(a), F.R.Civ.P., provides, however, that a complaint need set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." Neither Rule 8(a)(2), F.R. Civ.P., nor Rule 9(b) requires a plaintiff to recite the evidence or plead detailed evidentiary matter. *Fox v. Prudent Resources Trust,* 382 F.Supp. 81, 94 (E.D.Pa.1974). *See Credit & Finance Corp. Ltd. v. Warner & Swasey Co.,* 638 F.2d 563, 606 (2d Cir.1981).

### A. *Sufficiency of the Factual Allegations*

■ Measured by this standard the allegations concerning the Major group and Walter have been pleaded with the requisite specificity to satisfy Rule 9(b) with respect to: 1) the Colorado Pacific Petroleum ("ColPac") venture, (Complaint ¶ 3639); 2) the Allerkamp No. 2 Well (Complaint ¶¶ 40–43) and the Melms No. 3 Well, (Complaint ¶¶ 44–45); 3) the proved reserves, (Complaint ¶¶ 53–59); and 4) the financial statements on certain securities, (Complaint ¶¶ 64–68; ¶¶ 73–78) and the allegations against various individual defendants as directors and/or officers of United, Ma-

jor and Major Drilling and as to Walter, the companies' accountant.[10]

Both the Major group's and Walter's general objection to the complaint's specificity—that it is founded on information and belief—is not convincing. A complaint based upon information and belief survives a motion to dismiss under Rule 9(b) so long as the pleading includes a statement of facts upon which the belief is founded. *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Darvin v. Bache Halsey Stuart Shields, Inc.,* 479 F.Supp. 460, 464 (S.D.N. Y.1979) (Knapp, J.). Plaintiff's complaint and the affidavit submitted by plaintiff's counsel, Stuart Wechsler, contain, if barely, the requisite factual predicates.

Defendants, for example, challenge the complaint's sufficiency because plaintiff alleges only that Major or United "knew or had reason to know" that certain statements were false and misleading, without facts supporting his contention. Specifically, they refer to the joint venture agreement with ColPac. The crux of plaintiff's claim is that defendants Major and United made misleading announcements in the reports to investors and securities analysts with respect to the joint venture agreement. Plaintiff contends that at the time when defendants were advertising the agreement and its potential return for them, they "knew or should have known" that ColPac was unable to perform the terms of the purported agreement.

■ Contrary to defendants' suggestion, plaintiff's contention that Major or United "knew or had reason to know" the misleading nature of certain facts does not, itself, violate the specificity requirements of Rule 9(b). *See Fox v. Prudent Re-*

---

**9.** The cause of action in a count based on the sale of unregistered securities, pursuant to § 12 of the 1933 Act, as in Count IV, is not founded on fraud and, therefore, is not within Rule 9(b)'s particularity requirement. *Stern v. American Bankshares Corp.,* 429 F.Supp. 818, 827 (E.D.Wis.1977); *In Re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 349–350 (E.D.Pa.1976). Similarly, Rule 9(b) is inapplicable to Count

VIII of the complaint, which resounds in contract not fraud.

**10.** Defendants' arguments are well-taken with respect to the insufficient specificity of the other allegations and the Court dismisses these, with permission to replead.

sources *Trust, supra,* 382 F.Supp. at 95, *citing Dudley v. Southeastern Factor & Finance Corp.,* 446 F.2d 303, 308 n. 6 (5th Cir.1971). More importantly, the factual support for plaintiff's allegations is clear. Plaintiff maintains that during the period when Major and United were actively disseminating information concerning the joint venture agreement, they were, simultaneously, actively seeking to line up alternative drilling partners, allegedly because the ColPac deal was showing signs of falling through. (Complaint, ¶ 37). The pleadings, in this regard, adequately inform defendants of the charges against them, and defendants can obtain a more detailed factual basis, if they wish, through discovery.[11]

■ Defendants' further objection to the complaint—that plaintiff failed to specify in which documents defendants made the alleged announcements concerning the venture—is also rejected. Where plaintiff pleads as to matters peculiarly within the adverse party's knowledge, he is entitled to rely on information and belief in support of the allegations. *Segal v. Gordon, supra,* 467 F.2d at 608 (2d Cir.1972); *Green v. Hamilton Int'l Corp.,* 437 F.Supp. 723, 729 (S.D.N.Y.1977) (Tenney, J.) Because plaintiff refers to communications by defendants to various investors and analysts, and not to official reports generally available, it is more likely than not that the documents are in defendants' possession or within defendants' exclusive knowledge.[12]

■ Plaintiff has also stated its complaint with more particularity than defendants appear willing to concede with respect to allegations concerning the oil production

test results on the Allerkamp No. 2 and Melms No. 3 Wells. Plaintiff asserts in his complaint that Major and United knew or had reason to know that the announced initial flow rate of the Allerkamp No. 2 Well was misleading and could not be relied upon as an accurate indicator of the Well's actual production capacity. (Complaint, ¶ 41). In Wechsler's affidavit, he refers to a magazine article which reports that defendant Robert Tonachio admitted he was aware of the likely discrepancy between initial testing results and a well's later production capacity. (Affidavit, P. 5–6). Moreover, plaintiff also avers that certain test results, which they name specifically, indicated a far lower flow rate than the initial rate reported, but that this fact was never disclosed by defendants. Similar allegations and factual circumstances surround plaintiff's complaint with respect to the Melms No. 3 Well. In this way, plaintiff specifically states facts and describes events which give rise to a strong inference that the defendants had the knowledge which plaintiff claims they did. This is sufficient pleading under Rule 9(b). *Posner v. Coopers & Lybrand, supra,* 92 F.R.D. at 769 (S.D.N.Y.1981) (Goettel, J.).

■ Defendants' objections to the pleadings alleging Major and United's misstatements concerning their "proved and probable reserves" are unpersuasive. Plaintiff maintains that Major's Annual Report for 1981, and various statements to purchasers of their securities in 1982 vastly overestimated the value of proved and probable reserves of oil and gas in Texas properties owned by the company. Although defendants apparently concede factual support for plaintiff's allegations regarding "proved" reserves (see Wechsler

---

11. Greater latitude in the pleading of fraud must be allowed where plaintiff, as here, alleges injury resulting from a fraud perpetrated on securities analysts and investors, rather than on himself (or members of the class) directly. *See Dominicus Americana Bohio v. Gulf & Western Industries, Inc.,* 473 F.Supp. 680, 693 (S.D.N.Y. 1979) (Carter, J.).

12. Moreover, where plaintiff can identify documents specifically, he readily does so. In Major's 1981 financial statements and in the 1981

and 1982 financial statements of United, plaintiff identifies particular misstatements allegedly made by defendants: repeated failures to record certain losses and changes in accounting policies concerning the manner in which the companies classified certain securities. (Complaint ¶ 64–68, ¶ 76). Plaintiff, moreover, substantiates the basis on which he has reason to believe that the Major group defendants and Walter made such misstatements.

Affidavit, p. 7, citing Major's December 31, 1982, Form 10–Q), they maintain that the allegations are conclusory since the 10–Q could not provide the basis for plaintiff's statements regarding "proved *and* probable" reserves.

This technical argument ignores the purpose behind Rule 9(b)'s requirement. Plaintiff delineates seven allegations under the heading "proved" reserves, (Complaint, ¶ 53–59) and read together, these adequately set forth such matters as the time, place and contents of false representations to enlighten defendants on the charges against them. *See Robertson v. National Basketball Ass'n*, 67 F.R.D. 691, 695 & 697 (S.D.N.Y.1975) (Carter, J.).

Moreover, in addition to the 10–Q statement, plaintiff produces facts in connection with other properties, the Pearsall Prospect, that plainly imply that defendants knew the allegedly exaggerated quality of their statements. (Complaint, ¶ 58). To require the plaintiff to set forth his claims with any greater particularity would transform the pleading into an exposition of the evidence in the case. This the Court declines to do.

 The court also cannot agree that the complaint fails to inform certain of the individual defendants of what they have allegedly done wrong. While it is true that plaintiff does identify the corporate defendants without associating specific misstatements with individual officers and/or directors, such pleadings do not violate the pleading requirements of Rule 9(b) under the circumstances of this case.

There is no dispute that plaintiff has clearly identified individual defendants as directors and/or officers of United, Major, and Major Drilling, and in Walter's case, as the companies' accountant. It is also clear that, for the most part, plaintiff's allegations with respect to these defendants involve misstatements or omissions in documents—annual reports, financial statements—that may be presumed to entail the collective actions of the directors, officers, and the accountant, in some cases. *Zatkin v. Primuth*, 551 F.Supp. 39, 42 (S.D.Cal. 1982). This set of factors considered, individual identifications are unnecessary. As one Court reasoned:

> Were the plaintiff to identify each specific document which contains these misstatements and then delineate the role Arthur Young played in its preparation, this complaint would be far more voluminous than its present thirty pages. Such prolixity is not compelled—indeed is discouraged—by the Federal Rules of Civil Procedure. For the purposes of Rule 9(b), it is sufficient that the plaintiff has identified the categories of documents which allegedly contain misstatements and the nature of the information which he claims these documents either omit or misrepresent. These averments go well beyond the conclusory allegations that Rule 9(b) forbids; further specification of the allegedly wrongful role of Arthur Young is a task that the Federal Rules defer to the discovery state of litigation.

*Dupont v. Wyly*, 61 F.R.D. 615, 631 (D.Del. 1973) quoted in *B & B Investment Club v. Kleinert's, Inc.*, 391 F.Supp. 720, 727 (E.D. Pa.1975).

The allegations made by plaintiff involving misstatements contained in Major and/or United's Annual Reports and income statements, make easily identifiable the basic transaction on which plaintiff bases his claim of fraud. Other allegations, which concededly fail to identify specific documents in which misstatements were made, are sufficient in other respects to notify individual defendants of the capacities in which they are charged with fraud. Defendants stand apprised of the category of documents—press releases and other statements to investors and purchasers of the companies' securities—as well as of specific misstatements, to enable them to respond to plaintiff's allegations.[13]

---

13. It is for the reason that other assertions made by the plaintiff are too vague to permit a coherent response by defendants that the Court dismisses them. In paragraphs 60–68, plaintiff alleges that Major and/or United paid an inflated price for a large number of shares of three

### B. Insufficiency of Factual Allegations

 With respect to other individual defendants named in the complaint, however, plaintiff has failed to identify sufficiently either the wrongful acts they were to have committed, or the representations they were said to have made.

#### 1. Fittin

Plaintiff alleges that Fittin did not intend to, and failed to act as an independent underwriter in connection with the June, 1980 public offering. There is no support for this allegation. Plaintiff alleges that Fittin failed to meet its due diligence obligation. Nothing in this assertion gives any of the defendants proper notice to respond to the charges. Defendants are not apprised of what statements or misstatements they made, who made such statements, at what time, or in what manner, nor, most importantly, how the statements or their omission misled the plaintiff and what the defendants obtained as a consequence of the fraud alleged. When the pleadings are so deficient, dismissal is mandated under Rule 9(b), F.R.Civ.P. *See Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1088 (S.D.N.Y.1977) (Gagliardi, J.), *aff'd,* 636 F.2d 1201 (2d Cir.1980).

Although in paragraphs 29–35 of the complaint plaintiff describes with greater specificity potential conflicts of interest involving Fittin, Fittin's directors and attorney, and Robert Tonachio, president of United, defendants remain uninformed of the fraudulent acts or statements contained in the underwriting. Even if plaintiff intended to represent that certain omissions in the prospectus—defendants' failure to disclose the relationships between Fittin and Tonachio, and between Fittin and Major's legal counsel—themselves constituted the fraud, plaintiff must make clear what defendants gained as a consequence of their omissions. He has not done this. Therefore, all plaintiff's allegations concerning the "fraudulent underwriting" are dismissed for failure to comply with Rule 9(b). Because plaintiff has not made any other allegations against defendants Fittin, Lauzon, and Thomas Fittin, all counts against them are dismissed.

#### 2. Curtis D. Robert

 Plaintiff alleges that Robert, in concert with other members of the so called Freeman group, failed to disclose that certain tests on the Shell Rachel No. 1 Well had not been run properly and were unreliable indicators of the Well's true capacities. There is nothing in the complaint to supplement the bald assertion that Robert acted in concert with the Freeman group. Plaintiff does not identify Robert's relationship to the other members of the group. Nor does plaintiff allege any facts linking Robert to the sale of the Shell Rachel No. 1 Well, which makes plaintiff's charge against Robert, as an aider and abettor of the fraud committed upon plaintiff and the class (Complaint, ¶ 22), wholly conclusory.

Although plaintiff has permission to replead, the court notes that unless other factual allegations are made, no cause of action lies against Robert.[14] Robert seeks

Australian companies, the Magnet, Monarch and Lennard securities, and that Major, United and their accountant, Walter, "knew and failed to disclose in Major's and United's 1981 Annual Report" certain relationships which allegedly existed between Gerald Murphy, the chairman of Major and United, and the companies from which the shares were bought. While plaintiff asserts a conflict of interest involving Gerald Murphy, who owned a substantial number of shares in the Australian companies, and functioned as their public relations consultant, he fails to allege the facts linking Murphy to the purchase of the shares, or to allege, in any way, the particular fraud committed.

The Court also dismisses the allegations against defendants in paragraphs 46–52 for the reasons discussed *infra* with respect to Fittin. Finally, because all of the allegations concerning the "false financials" (Complaint, ¶ 79–83), are dependent on pleadings elsewhere in the complaint, the Court dismisses these. That is, they remain conclusory statements unless plaintiff is able to remedy the deficiencies in the pleadings noted above.

**14.** The arguments made by Robert would seem to apply to the other members of the so called Freeman group. Since they have not filed a motion requesting dismissal, we do not address

dismissal of those counts alleging violations of the federal securities statutes because he claims he lacked involvement in any purchase or sale of Major's securities, and that he owed no duty to any security holder of Major. Plaintiff has not asserted anything to the contrary.

Pursuant to section 10(b) and Rule 10b–5, however, Robert may still be liable secondarily, as an aider and abettor. *See Steinberg v. Carey*, [1977–1978 Transfer Binder] Fed.Sec.L.Rep. (CCH), ¶ 96,215 at 92,497 (S.D.N.Y.1977) (Weinfeld, J.); *see also Securities & Exch. Comm'n. v. Washington County*, 676 F.2d 218, 223 (6th Cir.1982). In order to establish aiding and abetting liability plaintiff must demonstrate three points:

(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;

(2) "knowledge" of this violation on the part of the aider and abettor; and

(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*IIT, An Int'l Inv. Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980). Plaintiff has not made such a showing.

Even were the Court to assume that plaintiff adequately pleaded the existence of fraud on the part of defendants, the Major group, (in connection with statements contained in Major's Annual Report mentioning the Shell Rachel No. 1 Well) plaintiff omits in its pleading any reference to defendant Robert's knowledge of the fraud. Nor has plaintiff pleaded in a way that apprises the Court of the substantial assistance rendered by Robert in accomplishing the alleged fraud.

■ Similarly, Count II of the complaint, based on section 12(2) of the 1933 Act, 15 U.S.C. § 77*l* (2), fails against Robert. This Court has interpreted liberally the standard for liability under § 12(2), imposing liability on a defendant if plaintiff's injury flows directly and proximately from the former's actions. *In re Caesars Palace Securities Litigation*, 360 F.Supp. 366 (S.D.N.Y.1973) (Weiner, J.). Nevertheless, although strict privity is not prerequisite to liability, plaintiff must establish clearly that defendant is at least a person acting as the immediate seller's agent, one who is alleged to be a controlling person of the immediate seller; one who actively participated in the sale, either as an aider and abettor or as a co-conspirator, or one under similar circumstances. *Lorber v. Beebe*, 407 F.Supp. 279 (S.D.N.Y.1975) (Knapp, J.). Plaintiff's allegations fail to place Robert in any of the above categories.

■ Finally, because plaintiff has failed to state a cause of action under section 10(b), it is clear that there is no private right of action under section 17(a) of the 1933 Act, 15 U.S.C. § 77q, at least in this Circuit. *Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978), *cert. denied*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979); *Marbury Management Inc. v. Kohn*, 470 F.Supp. 509, 515 n. 9 (S.D.N.Y. 1979) (Gagliardi, J.), *aff'd in part, rev'd in part on other grounds*, 629 F.2d 705, *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980), and cases cited therein. Therefore, this count against Robert is also dismissed.[15]

### III. *The RICO Count*

■ Both Robert and Walter have moved to dismiss Count V, charging all defendants with violation of RICO, 18 U.S.C. § 1961 *et seq.* There is no dispute that plaintiff must allege that defendant Robert engaged in "racketeering activity." While the Second Circuit has resolved recently in the affirmative a dispute as to whether racketeering can be premised on "garden variety securities fraud claims," plaintiff has failed here to state a claim for

whether the complaint has stated a cause of action against them.

**15.** The reasoning above, with respect to the counts alleging violations of the Securities laws, applies with equal force to the counts alleging pendent claims against Robert, and the Court dismisses these as well.

fraud against Robert. Consequently, there is nothing in the complaint to underpin the "predicate acts" of racketeering and the RICO count against him must fail. *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 at 18 & n. 14 (2d Cir.1983).

 The RICO count against Walter cannot be as readily dismissed. In *Moss v. Morgan Stanley, Inc., supra,* the Second Circuit reviewed in detail the scope and purpose of a RICO claim. It reversed, in substantial part, the district court's interpretation of the essential elements of a RICO claim, on which both plaintiff and defendants here have relied in briefing this issue. The Court found that the language of the RICO statute does not premise a RICO violation on proof or allegations of any connection with organized crime, *id.* at 21 & n. 17, and agreed with the District Court that § 1962(c) requires plaintiff to plead that an "enterprise" exists and that plaintiff must make a showing that there exists some "nexus between the pattern of racketeering activity and the enterprise." *Moss v. Morgan Stanley, Inc.*, 553 F.Supp. 1347, 1363 (S.D.N.Y.1983) (Pollack, J.). It rejected, however, the additional element required by the District Court that there be separate evidence to prove that the "enterprise" and the "pattern of racketeering" are distinct. Therefore, in certain cases, the proof offered to demonstrate "the pattern of racketeering activity" element may coalesce with the proof to establish the "enterprise element of RICO." *Moss v. Morgan Stanley, Inc., supra* at 22, *citing United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). *See also United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981).

Plaintiff has alleged at least two acts of fraud by Walter in connection with the purchase and sale of securities. (Complaint, ¶ 67–68). Such allegations of fraud satisfy RICO's "racketeering activity" pleading requisite. Cf. *Moss v. Morgan Stanley, Inc., supra* at 18. Since plaintiff need not premise his allegations on a connection between Walter and organized crime, and the Court may find that Walter's allegedly fraudulent accounting practices constitute an "enterprise," as it is defined in RICO, Walter's motion to dismiss Count V is denied. On the same theory, the Court declines to dismiss Count V against any of the defendants in the Major group.

In sum, Major group defendants' motion to dismiss the complaint pursuant to Rule 9(b) is denied. Insofar as defendant Parks has joined in the motions filed by the Major group, his motions are denied. Walter's motions are also denied. However, certain allegations against these parties, are dismissed, because they are not pleaded with the requisite specificity. These include any allegations against these parties are dismissed because they are not pleaded with (the fraudulent underwriting); paragraphs 46–52 (the Shell No. 1 Well); paragraphs 60–63 (the Magnet, Monarch and Lennard Securities, in part); paragraphs 69–70 (the Geo-Oil Acquisition, in part) and paragraphs 79–88 (the False Financials and Insider Trading). These last allegations, in particular, rely entirely on conclusory statements and assertions made previously in the complaint. The Court grants the motions filed by Fittin, Lauzon, Thomas Fittin and Robert. Plaintiff is given permission to replead. Should he do so, an amended complaint must be submitted no later than December 13, at which time defendants may renew their motions.

IT IS SO ORDERED.