Seymour LESLIE, Ralph S. Mann, Wilhelm Ornstein, Margarete Ornstein and Lawrence Ravich, Plaintiffs,

v.

Michael E. MINSON, Minoco Resources Company, L.F. Rothschild, Unterberg Towbin, Myron Neugeboren, Bennett Mostel, Ira Saunders, Michael Bresner, Manufacturers Hanover Trust Company, Chase Manhattan Bank, N.A. and Federal Deposit Insurance Corporation, as Receiver for Penn Square Bank, N.A., Defendants.

No. 84 Civ. 8579 (CSH).

United States District Court, S.D. New York.

Jan. 4, 1988.

Peirez, Ackerman and Levine, Great Neck, N.Y., for plaintiffs; John M. Brickman, of counsel.

Christy & Viener, Franklin B. Velie, Janis G. White, Lester Schwab Katz & Dwyer, New York City, for defendant Michael E. Minson; Howard Lester, Steven Getzoff, of counsel.

Segal & Tesser, New York City, for defendant Minoco Resources Co.; Lewis Tesser, Gregory J. Ryan, of counsel.

Bachner, Tally, Polevoy, Misher & Bringberg, New York City, for defendants Bennett Mostel and Michael Bresner; David E. Wolff, of counsel.

Hertzog, Calamari & Gleason, New York City, for L.F. Rothschild, Unterberg, Towbin and Myron Neugeboren; James E. Behar, of counsel.

Butler, Fitzgerald & Potter, New York City, for Federal Deposit Ins. Corp. as receiver of Penn Square Bank, N.A.; James M. Davis, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

By their first amended complaint (the "complaint"), plaintiffs assert against defendants federal securities fraud claims, to which state and common law claims are appended. All defendants move to dismiss the complaint.

Plaintiffs are individuals who purchased limited partnership interests in an oil and gas venture known as the Minoco 1980 LC Oil and Gas Program the ("Partnership"). The Partnership has three general partners. Two of them are defendants Michael E. Minson ("Minson") and Minoco Resources Company ("MRC"). The third general partner, Minoco Southern Company ("MSC"), is not a party to this action because it is in bankruptcy. Minson and MRC will at times be collectively referred to as "the Minoco defendants".

The complaint also names as defendants L.F. Rothschild, Unterberg, Towbin (Rothschild); a Rothschild partner, Myron Neugeboren; and Bennett Mostel, Ira Saunders, and Michael Bresner, Rothschild employees at the pertinent times. These are sometimes collectively referred to as the "Rothschild defendants".

Lastly the complaint names the Federal Deposit Insurance Corporation ("FDIC") in

its capacity as Receiver for the Penn Square Bank, ("Penn Square").[1]

All defendants move to dismiss the complaint. They all invoke Rule 9(b), F.R.Civ. P. Some defendants also posit their motions on Rules 8 and 12(b); but it is fair to say that, with the sole exception of the FDIC, the thrust of defendants' motions is a failure to plead fraud with the specificity required by Rule 9(b). The FDIC asserts that basis for dismissal of the claims against Penn Square, and also interposes jurisdictional and venue objections.

## I.

The case for plaintiffs, as alleged in the complaint, is that they were induced to invest in the Partnership by a confidential private offering memorandum (the "Memorandum"), and by oral representations made by certain of the Rothschild defendants. Plaintiffs' claim against FDIC as Receiver of Penn Square proceeds from Penn Square's status as lender to the Partnership and, in consequence, the beneficiary of letters of credit executed by plaintiffs as part of their investments. Plaintiffs contend that Penn Square recklessly placed loans with the Partnership, without advising plaintiffs of its reckless behavior. That omission, plaintiffs contend, binds Penn Square with the other defendants into a fraudulent scheme which damaged plaintiffs.

As to all defendants, plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10(b)–5 of the Securities and Exchange Commission. Under principles of pendent jurisdiction, plaintiffs also claim violations of Section 352–c and related provisions of the New York General Business Law, and assert common law causes of action for fraud and breach of fiduciary duty. Subject matter jurisdiction over the FDIC is also alleged under 12 U.S.C. § 1819(4).

## II.

Plaintiffs' claims against the Minoco defendants all arise out of the Memorandum. The relevant allegations appear in ¶¶ 33–67 of the complaint. The gravamen of plaintiffs' complaint against the Minoco defendants is that, in connection with earlier programs as well as this one, these defendants had acquired interests in oil fields in eastern Kansas (the "Kansas wells"). Plaintiffs charge, in summary, that the Kansas wells were represented in the Memorandum to be productive, whereas for a variety of technical reasons they were not. The consequence, plaintiffs say, was that the Memorandum misled investors into expectation of profits, and misled them concerning the Minoco defendants' prior "track record" in respect of drilling profitable wells.

■ The entire complaint is prefaced by that familiar phrase "upon information and belief." The general rule in this circuit is that Rule 9(b) pleadings cannot be based on "information and belief." *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972). An exception applies where matters are particularly within the adverse party's knowledge; but even there, the pleader may invoke the exception only if he includes a statement of facts upon which his pleaded information and belief are founded. *Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 769 n. 3 (S.D.N.Y.1981), citing *Segal*. To come within the exception and thus satisfy Rule 9(b), Judge Weinfeld wrote in *Crystal v. Foy*, 562 F.Supp. 422, 425 (S.D.N.Y. 1983):

"... plaintiff's complaint must allege (1) specific facts; (2) sources that support the alleged specific facts; and (3) a basis from which an inference of fraud may fairly be drawn."

As to the Minoco defendants, the present plaintiffs' complaint satisfies the first and third elements of Judge Weinfeld's formu-

---

1. The complaint as filed also included as defendants Manufacturers Hanover Trust Company and Chase Manhattan Bank, N.A., who on plaintiffs' behalf issued letters of credit to Penn Square under the circumstances described *infra*. This Court rejected plaintiffs' motion for prelim- inary injunction enjoining FDIC from drawing down on the letters of credit. Memorandum Opinion and Order dated December 11, 1984. Plaintiffs did not appeal, and thereafter by stipulation dismissed the complaint against those two banks.

la. The complaint alleges sufficient specific facts in respect of a specifically pleaded number of non-productive Kansas wells, thereby satisfying the first element. Furthermore, the conditions specifically alleged casting doubt upon the productivity of these wells are omitted from the memorandum, an obviously material omission (assuming the truth of these allegations) from which an inference of fraud might fairly be drawn. Thus the third element is present.

■■■ But the second element is missing. The complaint nowhere alleges or indicates the source or sources supporting plaintiffs' unflattering descriptions of the Kansas wells. Particularly in an "information and belief" pleading that is a fatal defect. The specific facts alleged may be sufficient, and if true permit an inference of fraud. But the pleader must also specifically plead the sources of his information and the grounds for his belief. Plaintiffs do not do so.[2]

Accordingly plaintiffs' complaint against the Minoco will be dismissed, with leave to replead.[3]

### III.

Plaintiffs' allegations of fraud against the Rothschild defendants appear in ¶¶ 68–82 of the complaint.[4]

In those paragraphs, plaintiffs complain of the Rothschild defendants' acts in selling the Program in two respects: use of documents, and oral representations.

The allegations with respect to documents appear in ¶¶ 68 and 69. Plaintiffs allege that Rothschild "and its representatives" (not named) used "documents, independent of the private offering memoranda" to sell "earlier Minoco Programs and units, including, without limitation" projections of cash results, statements of percentages of income tax deductions, and other written presentations. ¶ 68. Plaintiffs allege further that by "repeatedly and continually using the results" of earlier programs to sell interest in new partnerships, Rothschild (and Minson) "engaged in a 'Ponzi' or pyramid scheme."

■■■ These allegations do not pass muster under Rule 9(b). The individual representatives are not identified. The phrase "without limitation" does not conform with the rule's requirement of notice pleading. There is no allegation that the other documents (whatever they may include) were false, or that the unnamed Rothschild "representatives" knew that they were false. Plaintiff's use of colorful epithets such as "Ponzi" adds nothing. Lastly, there is no allegation that any Rothschild defendant

---

**2.** *Cf. Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 910 (S.D.N.Y.1983), upon which plaintiffs rely: "Moreover, plaintiff also avers that certain test results, which they name specifically, indicated a far lower flow rate than the initial rate reported, but that this fact was never disclosed by defendants."

**3.** Defendant Minson also argues that the complaint does not state facts sufficient to permit an inference of scienter on his part. There is no substance to this. Minson is alleged to be a general partner of MRC, as well as president, chief executive officer and a director of MSC. MRC and MSC are the other two general partners. If material information concerning the Kansas wells was fraudulently omitted from the Memorandum, Minson had access to it. Fraudulent intent on his part can reasonably be inferred. *Goldman v. Belden,* 754 F.2d 1059, 1071 (2d Cir.1985). Fraudulent misstatements or omissions of the corporate entities may, at least for pleading purposes, "be presumed to entail the collective actions, of officers and directors" *Somerville, supra,* at 911.

**4.** Certain Rothschild defendants are mentioned in earlier allegations, captioned "Conduct by Rothschild and Neugeboren." Complaint, ¶¶ 18–32. Thus ¶ 22 alleges that "Rothschild and several partners or principles of Rothschild" (not further identified) owned at least 52.4% of the limited partnership interests in MRC. ¶¶ 23–24 allege that "Minson and (or an affiliated corporation or entity of his" (not named) provided Neugeboren with a BMW automobile, contrary to Rothschild regulations. ¶ 28 alleges that Rothschild and MRC had the same accountants, and Neugeboren applied "pressure" to those accountants to deliver favorable opinions on MRC and MSC. These allegations do not directly address the existence of fraud on the part of the Rothschild defendants in respect of the Partnership in suit. Rothschild's alleged failure to perform a due diligence examination of the Partnership is considered in text *infra.*

made use of these particular documents to defraud these particular plaintiffs with respect to this particular Program.

Plaintiff's allegations with respect to the Rothschild defendants use of documents do not satisfy Rule 9(b).

Plaintiffs' allegations with respect to oral representations made by Rothschild defendants appear in ¶¶ 70–82. Here, at least, there are specific references to these plaintiffs and to this Program, and to specific defendants.

It bears repeating that the entire complaint is prefaced "upon information and belief." Keeping that in mind, analysis of the complaint indicates that four individuals are named as having made fraudulent oral representations. These are Neugeboren, a partner of Rothschild, and three former employees, Mostel, Saunders, and Bresner. Each individual defendant is entitled to Rule 9(b) specificity with respect to the utterances ascribed to him. Defendant Rothschild, charged with the acts of these individuals, has no less an interest.

Plaintiff's familiar Rule 9(b) obligation, in respect of each individual defendant, is to specify:

"... 1) precisely what statements were made in what documents or oral representations or what omissions were made, and 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, 3) the content of such statements and the manner in which they misled the plaintiff, and 4) what the defendants obtained as a consequence of the . fraud." *Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978).

■ Where, as here, a number of individuals are charged together as participants in a fraudulent scheme, specific allegations must be made with respect to each particular individual. *Zerman v. Ball*, 735 F.2d 15, 22–23 (2d Cir.1984), and cases there cited.

The complaint at bar alleges that "in late 1980", before plaintiffs made their investments, at several meetings in plaintiff Leslie's office "one or the other or both [defendants] Mostel and Saunders, in the presence of each other, told Leslie and Charles T. Winant" that the investment would be "great", "conservative", of the "highest possible kind and quality and posed no risk" that payments would be required under the letters of credit; that Minson and MRC were experts in oil and gas programs; and other encouraging words. Winant is identified as "an accountant who preformed services for all the plaintiffs except Ravich", and who "in turn repeated [defendants'] statements to the other plaintiffs" (unnamed). ¶ 71.

The complaint also alleges that in a "telephone conversation" (undated), Neugeboren told Leslie and Winant that Rothschild regarded the Partnership as "an excellent investment", and Minson as a "great" operator. ¶ 72.

¶ 73 goes on to say that Leslie and Winant "were advised" (it is not said when or by whom, unless this is intended to be a continuation of the telephone conversation alleged in ¶ 72) that Neugeboren and another Rothschild representative would serve as directors of MSC, and so monitor and protect plaintiffs' investments.

¶¶ 74 and 75 allege that on an unspecified date, Winant met with Hayward Sawyer, a "representative of Minson and MRC and an officer" of MSC, at Rothschild's offices and told Winant the Partnership represented an excellent investment, using figures showing "the purported performances" of prior programs. There is no allegation that Winant communicated these statements to any plaintiff.

¶¶ 76–80 allege a series of telephone conversations "sometime in or about November of December 1980" between defendant Bresner and plaintiff Ravich. In essence, plaintiffs allege that Bresner told Ravich the Partnership would be successful, and investor's letters of credit would not be drawn upon, urging Ravich to invest and provide his letter of credit as quickly as possible.

Following these particular allegations, ¶ 82 of the complaint alleges generally: "the oral representations [all of them, it

would appear] were false and fraudulent when made and were made knowingly or with reckless disregard of their falsity."

■ These allegations do not satisfy Rule 9(b). No extended analysis is necessary. It is not at all clear who told what to whom and when. Thus ¶ 71 does not specify whether Leslie or Winant, or both of them, repeated the statements of Mostel and Saunders to each of the plaintiffs, and when they did so. The question is apt, since Winant is identified as performing services for all plaintiffs "except Ravich." As for the conversations between Sawyer and Winant, there is no allegation that any Rothschild defendant knew of them, or that Winant communicated what Sawyer told him to any particular plaintiff. The alleged conversations between Bresner and Ravich would suggest that Ravich's claim is only against Bresner (and through Bresner, Rothschild); but the generalities which overlie this section of the complaint introduce an element of doubt.

As for defendant Neugeboren, the only utterances specifically ascribed to him take place in a telephone conversation with Leslie and Winant. It is unclear whether any other individual plaintiff asserts a claim against Neugeboren and if so, on what basis.

■ Secondly, most of the statements alleged in the complaint are not actionable, in the absence of further specific allegations of fraud. Encouraging characterizations of investments, in and of themselves, "do not constitute representations of fact that could be actionable under the securities laws." *Zerman v. Ball, supra,* at 21 (the proffered bonds were "marvelous"). Whether such declarations be regarded as statements of fact or opinion, their utterance does not state a claim for securities fraud unless the plaintiff also alleges that at the time of the declarations, the views expressed were not honestly held by the declarant or were known to be false, or were recklessly arrived at. *Zerman v. Ball, supra,* at 21; *Bourdages v. Metal Refining Ltd.,* [Current] CCH Fed.L.Rptr. ¶ 91828 (S.D.N.Y.1984) [Available on WESTLAW, 1984 WL 1209]; *Darvin v.*

*Bache Halsey Stuart Shields,* 479 F.Supp. 460, 464 (S.D.N.Y.1979); *Marbury Management, Inc. v. Kohn,* 470 F.Supp. 509, 512 (S.D.N.Y.1979) and cases cited.

■ Plaintiffs fail to allege this element. The general allegation of falsity in ¶ 82 of the complaint, which does no more than track the statutory language, is clearly insufficient. *Crystal v. Foy, supra.* See also *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 117–18 (2d Cir.1982) ("economic prognostication, though faulty, does not, without more, amount to fraud", in absence of allegations of "particulars" as to why declarant's "stated reliance on those forecasts was false or misleading"), quoting *Polin v. Conductron Corp.,* 552 F.2d 797, 805 (8th Cir.), *cert. denied,* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977). Incantation of the statutory definition of fraud, with a general reference to the allegations of the complaint, is equally insufficient. *Id.* at 120.

In its prefatory allegations, said to recite "facts common to all causes of action", plaintiffs say that "Rothschild employed no expert to perform due diligence examinations" of earlier Minoco programs, "or the Partnership." ¶ 26. "By reason of the foregoing", ¶ 27 continues, "Rothschild recklessly failed to investigate the circumstances of the Minoco defendants."

■ This particular allegation, that Rothschild "employed no expert to perform due diligence examinations", is the sole specific averment from which a finding of scienter could be inferred. Even if one indulges plaintiffs by transposing these allegations to that part of the complaint specifically charging the Rothschild defendants, this single allegation is insufficient. Other independent experts, whose conclusions were known to Rothschild, may have evaluated the Minoco defendants, albeit not retained by Rothschild. The gravamen of plaintiffs' claim against Rothschild is that, when it recommended the Partnership to Plaintiffs, Rothschild acted in reckless disregard of the Partnership's value and potential, or possessed information indicating that their enthusiastic descriptions were in-

correct. "Specific facts giving rise to a strong inference of such knowledge or disregard, known as scienter, must be alleged." *Deutsch v. Flannery*, 597 F.Supp. 917, 921 (S.D.N.Y.1984) and cases cited. The lonely allegation in question is not enough.

The complaint against the Rothschild defendants, and each of them will be dismissed, with leave to replead.[5]

## IV.

In moving to dismiss the complaint against it, the FDIC also challenges the sufficiency of plaintiffs' fraud allegations under Rule 9(b). But the FDIC makes additional arguments under Rule 12(b).

The FDIC accepts for the sake of its motion that as Receiver of Penn Square, it has succeeded to Penn Square's liabilities. Accordingly the analysis focuses upon the acts and omissions of Penn Square.

Rule 12(b) lies closer to the heart of the FDIC's motion than that of the other defendants because, unlike them, plaintiffs claim no direct contacts with or communications from Penn Square employees. Penn Square is in the case because, as part of their investment in the Partnership, plaintiffs instructed their respective banks to open letters of credit in favor of Penn Square, which had loaned money to the Partnership.

Plaintiffs' allegations against Penn Square appear in ¶¶ 83–115 of the complaint, captioned "Conduct by Penn Square".

Plaintiff's recitation begins with the allegations that from 1976 to 1981, Penn Square engaged in a scheme to defraud which involved its "rapid growth and a pattern of spiraling energy loans." ¶¶ 83, 84. Plaintiffs then go on to recount in detail the now familiar tale of Penn Square's spectacular mismanagement. In the context of Plaintiff's investments in the Partnership, plaintiffs complain that Penn Square "regularly and consistently made energy loans without proper documentation and supervision in order to generate fee income and additional interest income", and "was indifferent to collectability or the business of collecting its loans, but instead would recklessly expose the providers of standby collateral such as the plaintiffs to the unreasonable risks, if not certainty, that their collateral would be called and no oil produced ..." ¶¶ 137, 144.

Apart from a single allegation of "untrue statements" which is never followed up and may be disregarded [6], the Penn Square conduct of which plaintiffs complain is the bank's failure to advise plaintiffs of these bad banking practices. Had they known these things, plaintiffs conclude, they "would never have instructed their banks to open letters of credit in favor of Penn Square and would never have delivered these letters of credit to Penn Square as part of their investment in the Partnership." ¶¶ 137, 144. Thus the case is one of failure to disclose.

■ In these circumstances, Penn Square's nondisclosure does not amount to deception "in connection with the purchase or sale of any security", the jurisdictional

---

**5.** The Rothschild defendants say plaintiffs should be denied leave to replead because they voluntarily amended their initial complaint. Therefore, Rothschild argues, the present pleading must be characterized as plaintiff's "best shot", and thus incapable of improvement.

I reject this argument because its rigid application would discourage voluntary, and generally laudable, efforts to improve pleadings. Of course, in repleading plaintiffs and their counsel must be mindful of the strictures of the 1983 amendments to Rule 11.

**6.** ¶ 138 of the complaint alleges:

"Penn Square made untrue statements of material facts and omitted to state material facts

necessary in order to make the statements, in light of the circumstances under which they were made, not misleading, with the knowledge, or the reckless disregard, of whether such representation was false and misleading in the respects alleged above."

The "untrue statements" are never particularized. It appears to be common ground that the defendant general partners negotiated the Partnership loan with Penn Square; that plaintiffs' banks issued the letters of credit to Penn Square on plaintiffs' invitations; and that no employee of Penn Square ever said or wrote anything to any plaintiff about plaintiff's investments.

predicate to a Section 10(b) action. The FDIC is entitled to dismissal of the complaint under Rule 12(b)(6). Leave to re-plead will not be granted.

The judicially sanctioned § 10(b) private right of action is not intended to bring within the ambit of federal securities law fraud claims arising out of "no more than corporate mismanagement." *Superintendent of Insurance of the State of New York v. Bankers Life and Casualty Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). The purpose of the statute and its accompanying rule "is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known by the buyer not to be what it purports to be." *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.1984) (Friendly, Ct. J.).

█ Plaintiffs at bar claim that but for Penn Square's concealment of its own mismanagement, they would not have instructed their own banks to open letters of credit. Letters of credit are not "securities" within the context of the 1934 Act. Plaintiffs do not suggest otherwise. Therefore Penn Square's conduct did not directly deceive plaintiffs into purchasing or selling securities.

Nor can I accept plaintiffs' broader contention that Penn Square "was a participant in a fraudulent scheme" in connection with the purchase or sale of a security, *i.e.*, the Partnership shares (brief at 27). There is no allegation that Penn Square employees knew the Partnership's assets were overvalued, or recklessly disregarded the truth with respect to them. Of necessity, plaintiff cast the net of their pleading over Penn Square's entire method of doing business; hence their allegation that Penn Square recklessly exposed "the providers of standby collateral *such as plaintiffs*" to unreasonable risk. ¶¶ 137, 144 (emphasis added).

Bereft of any basis for arguing that Penn Square specifically intended to de-fraud them, plaintiffs are reduced to a "but for" theory of causation. Judge Friendly rejected that theory as insufficient in *Chemical Bank, supra.* Plaintiffs in that case were banks which loaned funds to a corporation. The borrower secured the loans by pledges of its stock in a wholly-owned subsidiary. The defendant accountant had certified the borrowing corporation's financial statements. The corporation went bankrupt and defaulted on the loans. The banks sued the accountant under § 10(b), alleging that the financial statements were false and misleading; that they caused the loans; and that the loans in turn caused a pledge of stock, thereby bringing the accountant's conduct within the statute. Not so, Judge Friendly wrote:

"Such 'but-for' causation is not enough. The Act and Rule impose liability for a proscribed act in connection with the purchase or sale of a security; it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part."

726 F.2d at 943.

Plaintiffs at bar faintly protest that *Chemical Bank* does not control "the wholly distinct issue of whether a complaint alleging a scheme to defraud in the sale of securities contains sufficient allegations as to particular defendants." Brief at 27. But *Chemical Bank*'s rationale brands plaintiffs' allegations as insufficient. The question the Second Circuit answered in the negative is "whether misrepresentations or omissions involved in a securities transaction but *not pertaining to the securities themselves*" can form the basis of a § 10(b) violation. *Ibid.* (emphasis added). That negative answer both sums up and condemns plaintiffs' theory against Penn Square, and through it, the FDIC.

Plaintiffs having fallen at the statute's first hurdle, I need not consider in detail the FDIC's other bases for dismissal. It is sufficient to say that plaintiffs' allegations are equally deficient under Rule 9(b) analysis.

Plaintiffs cannot cure the defect of their securities claim against the FDIC by a fur-

ther amendment of the complaint. Accordingly leave to replead will not be granted as to this defendant. To the extent that plaintiffs asserts state law claims against Penn Square and the FDIC, I dismiss them for lack of pendent jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed. 2d 218 (1966).[7]

### Conclusion

The Clerk of the Court is directed to dismiss the first amended complaint against defendant Federal Deposit Insurance Corporation, as Receiver for Penn Square Bank, N.A., with prejudice and with costs. There being no just reason for delay, the Clerk is directed to enter judgment against plaintiffs and in favor of that defendant, pursuant to Rule 54(b), F.R.Civ.P.

The Clerk is directed to dismiss the first amended complaint against all other defendants with prejudice and with costs, as to the second and seventh causes of action, to the extent they purport to arise out of federal securities laws. All other causes of action alleged against these defendants are dismissed without prejudice for lack of pendent jurisdiction. Plaintiffs are granted leave to replead against these defendants, if so advised, within thirty (30) days of the date of this Opinion.

It is SO ORDERED.

---

**7.** The FDIC also moved to dismiss the complaint against it for lack of subject matter jurisdiction; improper venue; lack of personal jurisdiction; and insufficiency of service of process. The question of subject matter jurisdiction is not separately addressed in the briefs. The parties apparently agree that the Court may appropriately consider the legal sufficiency of the complaint, notwithstanding the other, procedural objections. Having found the complaint wanting, I need not further consider these other issues, except to say that plaintiffs concede venue over the FDIC is improper but urge me to request the FDIC to waive its objection. Brief at 32–33. Waiver would be for the FDIC to decide. I would not pressure the agency in its decision.