SEAGOING UNIFORM
CORPORATION,
Plaintiff,

v.

TEXACO, INC., et al., Defendants.

No. 84 Civ. 1730 (CBM).

United States District Court,
S.D. New York.

Jan. 24, 1989.

Silverman & Harnes by Joan Harnes, New York City, for plaintiff.

Simpson Thacher & Bartlett by Roy L. Reardon, George M. Newcombe, Mary Elizabeth McGarry, Elizabeth A. Forman, New York City, for defendants Bass Brothers Enterprises, Inc., Bass Brothers Development Co., Perry R. Bass, Inc., Sid Richardson Carbon & Gasoline Co., Perry R. Bass, Sid R. Bass, E.P. Bass, Robert M. Bass, Lee M. Bass, Richard E. Rainwater, Alfred A. Checchi, Thomas M. Taylor, Wesley Guylay Capital Management and Wesley Richard Guylay.

Skadden, Arps, Slate, Meagher & Flom by Barry H. Garfinkel, New York City, for defendant Texaco Inc.

## OPINION

MOTLEY, District Judge.

### I. BACKGROUND

In 1984, the Bass defendants, a group of investors, purchased a large quantity of Texaco stock. Pursuant to the provisions of Section 13(d)(1) of the Securities Exchange Act of 1934, the Basses filed a Schedule 13(d) statement representing that

the acquisition was solely for investment purposes. Soon thereafter, defendant Texaco announced it would repurchase the Bass stock at terms extremely favorable to the Bass investors. This series of events spawned numerous lawsuits brought by Texaco stockholders.

Plaintiff Seagoing Uniform Corp., a Texaco stockholder, filed suit in the instant case in this court alleging that the Bass defendants' Schedule 13(d) contained material misstatements concerning their true speculative intentions in acquiring Texaco stock, and thus violated Sections 9(a)(2), 10(b) and 13(d) of the Securities Exchange Act.

A class action derivative suit filed on behalf of Texaco stockholders was meanwhile filed in the Delaware Chancery court. This action asserted common law claims of fraud and misrepresentation. The Delaware court, however, was jurisdictionally barred from addressing any claims under the 1934 federal securities laws which are in the exclusive jurisdiction of the federal courts.[1] Seagoing appeared as a class member plaintiff in the Delaware settlement hearings while still maintaining its federal action in this court. The Delaware case was eventually settled, thus ending the litigation of the common law claims. The Bass defendants, who had not initially been defendants in the Delaware action because of that court's limited jurisdictional reach, consented to be included in the action for purposes of settlement only.

In approving the settlement, the Delaware Chancellor expressly declined to rule on the res judicata effect of the disposition. Both the Bass defendants and Texaco have now moved for summary judgment on the grounds that 1) the Delaware state court disposition of plaintiff's claims is res judicata on the present suit and 2) that plaintiff's claims had been released and barred in the Delaware proceeding. Therefore, defendants contend, the proposed amended complaint raising claims which have allegedly been compromised by the plaintiff class in the Delaware litigation, which are further barred by res judicata, and which for various reasons laid out by defendants fails to state a claim, should be denied. For reasons stated below, summary judgment on the grounds of res judicata and of release of claims by the plaintiff class is denied. Plaintiff's motion to amend the complaint is granted.

## II. *RES JUDICATA*

The focus of the present dispute is the res judicata effect of the Delaware decision on Seagoing's federal claims. Defendants claim that because Seagoing chose a forum of limited jurisdiction rather than the available federal forum which could have heard the state and federal claims, it must suffer the consequences of its choice. In other words, Seagoing cannot now argue that its federal claims are somehow exempt from the res judicata bar.

Seagoing concedes that its claim has indeed been split, but argues that under the "jurisdictional competence" exception recognized by Delaware's res judicata law, the particular claim splitting that occurred here is permissible.

The doctrine of res judicata is a judicially-created doctrine "to prevent vexatious litigation and to promote the stability and finality of judicial decrees." *Maldonado v. Flynn*, 417 A.2d 378, 381 (Del.Ch.1980) (citations omitted). "The doctrine permits a litigant to press his claims but once, and requires him to be bound by the determination of the forum he has chosen, so that he 'may have one day in court but not two.'" *Id.* (quoting *Malone Freight Lines, Inc. v. Johnson Motor Lines, Inc.*, 148 A.2d 770, 775 (Del.Supr.1959)).

There is no dispute that in determining the res judicata effect of the Delaware action at issue here, it is Delaware's res judicata law that must be applied. In accordance with the principles of "full faith and credit," in determining the res judicata

---

**1.** Section 27 of the 1934 Act gives the United States District Courts " 'exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder.' " *quoted in* L. Loss, Fundamentals of Securities Regulation 949 (1988).

effect of a state court decision on a subsequent federal claim—even a claim within the exclusive jurisdiction of the federal courts—a federal court must use the claim preclusion law of the state that made the first disposition. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Since the question at issue in this summary judgment motion is the effect of the Delaware disposition, Delaware res judicata law applies.

### A. Delaware Res Judicata

Delaware employs the "transactional" approach to claim preclusion. *DeRamus v. Redman.* No. 79C–No.–88 (Del.Super. Nov. 14, 1986) [1986 WL 13089] (LEXIS, states library, Del). Under this approach, all claims arising out of the same "common nucleus of operative facts" must be brought in one action. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). "The rule against claim splitting is an aspect of the doctrine of res judicata and is based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times." *Maldonado, supra,* 417 A.2d at 382. If the plaintiff has merely failed to present some facts or neglected to assert a claim which could have been asserted, res judicata will bar the assertion of such omitted claim in a subsequent action. Thus, for example, a plaintiff could not split his claims between an initial federal lawsuit under section 1983, and a subsequent lawsuit asserting common law claims, where the plaintiff could in fact have brought the common law claims in the first lawsuit under the principle of pendent jurisdiction. *Id.*

■ There is no dispute that in the instant case, the common law claims and the federal Securities Exchange Act claims arise from the same transaction, ie. the alleged misrepresentation by the Basses of their motives for acquiring the Texaco stock and the ensuing alleged "greenmail" between the Bass defendants and Texaco.

However, Delaware res judicata law also recognizes a "judicial competence" exception to the general prohibition against claim splitting. *Maldonado, supra,* 417 A.2d at 381. If because of jurisdictional restrictions a plaintiff is unable to assert his claim in its entirety in a prior proceeding, the general rule against claim splitting will not be applicable against him. The *Restatement (Second) of Judgments* § 61.2(1)(c), which is endorsed and adopted by Delaware, *see Maldonado, supra,* 417 A.2d at 383, provides that the rule against claim splitting will not apply where:

> The plaintiff was unable to rely on a certain theory of the case ... in the first action because of subject matter jurisdiction of the courts ... and the plaintiff desires in the second action to rely on that theory....

Seagoing was jurisdictionally barred from presenting in the Delaware court the securities law claims now being presented to this court. Under Delaware law, the jurisdictional competence exception to res judicata should permit the subsequent assertion of the federal claims here. *See e.g., Meding v. Hurd,* 607 F.Supp. 1088, 1098–1100 (D.C.Del.1985) ("Although the prior state court judgment obtained by [plaintiff] arose out of the same operative facts that form the basis of the claims he presently seeks to assert in federal court, the prior court judgment precludes only subsequent claims in which the Superior Court had jurisdiction to award the relief which plaintiff presently seeks.").

Defendants counter that the jurisdictional competence exception is extremely limited. According to defendants, the exception looks not only to the jurisdictional competence of the actual prior court, but also to the jurisdictional competence of any court where plaintiff could have brought its claims initially, whether or not it in fact did. Defendants argue that because Seagoing could have brought suit on both its federal and common law claims in one federal court action, the jurisdictional competence exception cannot now be invoked.

Delaware res judicata law does provide certain limits to the judicial competence exception when dealing with courts in the same system. Under *Mells v. Billops*, 482 A.2d 759 (Del.Super.1984), plaintiff was barred from asserting claims in a second action that could not have been presented to the first court because of jurisdictional limits. *Mells, supra,* barred a plaintiff's subsequent personal injury action in Superior Court on the basis of a prior judgment on property damage in a lower local court of very limited jurisdiction. Although plaintiff clearly could not have brought his personal injury claim in the first court, the claim was still barred because he could have brought both his property and personal injury claims in the higher state court of more general jurisdiction. As stated by the Delaware court, "[t]he fact remains ... that plaintiff was not compelled to bring part of his claim in the Justice of the Peace Court. Rather, he voluntarily chose a court of limited jurisdiction when he could have presented all his claim ... had he brought the original action in this Court." *Mells, supra,* 482 A.2d at 761.

Because plaintiff in *Mells v. Billops, supra,* chose a particular state court of limited jurisdiction instead of another state court of more general jurisdiction where he could have pressed all his claims, he was prevented by the court from splitting his cause of action arising from the same transaction or incident into two lawsuits. The prohibition against claim splitting enunciated in *Mells v. Billops, supra,* thus involves a single state court system, and not a state/federal system as is the case at

bar. *Cf. Maldonado, supra,* 417 A.2d 378 (Claim splitting between courts of different systems is also prohibited where there is no jurisdictional bar to the presentation of all of plaintiff's claims in the first forum. Having failed to evoke pendant jurisdiction to present state claims in a federal court, plaintiff is precluded by res judicata from asserting a second state action).

The Bass defendants' argument for summary judgment would be strengthened if the two scenarios discussed above—limiting the use of the judicial competence exception in cases involving a single court system, and barring claim splitting in cases involving courts of different systems because there was no jurisdictional bar in the first forum—were applicable to the present situation. Defendant's reliance on *Mells v. Billops, supra,* 482 A.2d 759, is inapposite because the holding in that case, made in the context of a single court system, does not apply to the case at hand, which involves different systems of courts.

The Restatement (Second) of Judgments specifically recognizes this distinction. According to the Restatement, a second action in the same system of courts will be barred if the claims raised in this second action could have been brought in some prior litigation in the same system of courts. Thus, under the Restatement, one cannot expect to invoke the jurisdictional competence exception by choosing a low level state court of very limited jurisdiction for a "first bite of the apple" when it is clear that a state court of more general jurisdiction is available to hear all claims arising out of the transaction.[2]

**2.** *Restatement (Second) Judgment,* § 24, Comment (g), upon which both *Marrese v. American Academy of Orthopaedic Surgeons, supra,* 470 U.S. 373, 383 n. 3, 105 S.Ct. 1327, 1333 n. 3 and *Mells v. Billops, supra,* 482 A.2d 759, 761 relied, provides as follows:

> The rule stated in this Section as to splitting a claim is applicable although the first action is brought in a court which has no jurisdiction to give a judgment for more than a designated amount. When the plaintiff brings an action in such a court and recovers judgment for the maximum amount which the court can award, he is precluded from thereafter maintaining an action for the balance of his claim. It is assumed here that a court was available

> to the plaintiff *in the same system of courts*— say a court of general jurisdiction in the same state—where he could have sued for the entire amount. [emphasis added].

As the Supreme Court in *Marrese, supra,* clearly states, "[t]he rule that the judgment of a court of limited jurisdiction concludes the entire claim assumes that the plaintiff might have commenced his action in a court *in the same system of courts* that was competent to give full relief. [citation omitted] [emphasis in original].... [T]he jurisdictional competency requirement generally is understood to imply that state court litigation based on a state statute analogous to a federal statute ... does not bar subsequent attempts to secure relief in federal court if the state court lacked jurisdiction over the federal

This rule, essentially mandating the choice of the court with the broadest jurisdiction in order to avoid a subsequent res judicata bar, simply does not apply under Delaware law when, as here, two different court systems are involved and when the state court system is judicially incompetent to entertain a certain matter within the exclusive jurisdiction of the federal courts.[3] "If state preclusion law includes this requirement of prior jurisdictional competency, which is generally true, a state judgment will *not* have preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts." *Marrese, supra,* 470 U.S. at 382, 105 S.Ct. at 1333 [emphasis. in original]. Delaware preclusion law does recognize the jurisdictional competency exception to the general prohibition against claim splitting, *see e.g. Maldonado, supra,* 417 A.2d at 383. Plaintiff's cause of action under the 1934 Act does lie within the exclusive jurisdiction of the federal courts. Therefore, in accordance with the Supreme Court's analysis in *Marrese, supra,* the Delaware judgment does not have preclusive effect on plaintiff's present action.

## III. *RELEASE*

In further support for their motion for summary judgment, defendants argue that Seagoing's claims had been released in the Delaware proceeding, thereby barring Seagoing's assertion of such claims in the present action. Defendants contend that Seagoing's claims arise out of the same transactions that formed the basis for various class actions against them, actions which have been consolidated and settled.

Various class and derivative actions were in fact commenced in state and federal courts following Texaco's repurchase of the Basses' Texaco shares. Plaintiffs in one Delaware action and several other actions entered into agreement, stipulating settlement of certain claims. As noted in the Delaware Chancellor's opinion, the parties agreed that "the common law fraud and misrepresentation claims in the *Seidle* action will ... be dismissed, with prejudice...." Newcombe Affidavit, Exhibit Q, p. 24. The Chancellor noted, however, that "the proposed settlement does not purport to dismiss the Federal claims of the *Seidle* action based upon the 'fraud on the market' theory. In fact, they are specifically excluded from the literal parameters of the proposal settlement [sic]." *Id.*

While it is, of course, true that a state court has authority to approve a settlement that compromises claims within the exclusive jurisdiction of federal courts, *see e.g., Abramson v. Pennwood Investment Corp.,* 392 F.2d 759 (2d Cir.1968), the federal claims at issue here were not compromised and were not included in the Delaware settlement. The Delaware Chancellor explicitly observed in his opinion that:

"Seagoing's complaint in the Federal action in the Southern District of New York charges that the Bass brothers did this [purchasing Texaco stock] with the intent, among other things, to drive up the price of Texaco shares on the market and to pressure Texaco's board into repurchasing their shares at a large premium over their true value.... This wrong is alleged to be made actionable by the failure of the Bass Brothers to disclose this intention in the Form 13D filed by them, and thus by their violation

---

statutory claim." *Marrese,* 470 U.S. at 383 n. 3, 105 S.Ct. at 1333 n. 3.

**3.** The *Restatement (Second) of Judgments* § 26(1)(c), Comment c(1), states in relevant part as follows:

A given transaction may result in possible liability under the law of a state and alternatively under a federal statute enforceable exclusively in a federal court. When the plaintiff brings an action in the state court, and judgment is rendered for the defendant, the plaintiff is not barred from an action in the

federal court in which he may press his claim against the same defendant under the federal statute.

Illustration 2 further explains:

A Co. brings an action against B Co. in a state court under a state antitrust law and loses on the merits. It then commences an action in a federal court upon the same facts, charging violations of the federal antitrust laws, of which the federal courts have exclusive jurisdiction. The second is not barred.

of the rules and regulations of the Securities and Exchange Commission."

Newcombe Affidavit, Exhibit Q, p. 42–43.

Immediately following the above quoted observation, the Chancellor further added that "I do not view these [Seagoing's] Federal allegations to be subsumed or included within the allegations of the complaint in the consolidated action here, nor would I think them to be covered by the common law charges of fraud and misrepresentation alleged in the *Seidle* action...." *Id.*

To support their argument that the Seagoing federal claims have nonetheless been released, defendants point to the following portion of the Stipulation of Compromise and Settlement:

> NOW, THEREFORE, IT IS STIPULATED AND AGREED, subject to the approval of the Delaware Court pursuant to Rules 23 and 23.1, and subject to proceedings in the courts where the Non–Delaware Subject Actions are pending as herein described, that the Subject Actions, all claims alleged in the complaint therein and all other claims that are or could have been asserted in connection with, or that arise out of, or that hereafter arise out of, any matters or transactions referred to or alleged in the complaints in the Subject Actions or this Stipulation shall be compromised and dismissed with prejudice....

Defendant Texaco Inc.'s Memorandum In Support Of Defendants' Motion For Summary Judgment And Defendants' Motion to Dismiss And In Opposition To Plaintiff's Motion To Amend The Complaint, Exhibit A, p. 13. The stipulation was approved in an Order and Final Judgment which barred the pursuit of any action "asserting claims against anyone which could have been asserted in the Consolidated Action or which arise now or hereafter out of the Consolidated Action, the Settlement ... or any matters, transactions or occurrences referred to in the pleadings in the Consolidated Actions...." *Id.*, Exhibit C. p. 4.

As sweeping as the language in the Stipulation of Compromise and Settlement and the Order and Final Judgment appear to be, the settlement clearly cannot encompass claims which were specifically and explicitly excluded from settlement (i.e. the Federal claims of the *Seidle* action which were "specifically excluded from the literal parameters of the proposal settlement [sic]," Newcombe Affidavit, Exhibit Q, p. 24, and Seagoing's federal allegations which the Chancellor does not view "to be subsumed or included within the allegations of the complaint in the consolidated action ..." *Id.* at 43). The court thus concludes that where the Chancellor explicitly excepted certain federal claims, including Seagoing's, from the reach of the settlement, such claims cannot be said to have been released. Defendants' motion for summary judgment on that ground is denied.[4]

## IV. *AMENDED COMPLAINT*

### A. Statement of Facts

The original complaint was filed on March 12, 1984, alleging that the Bass defendants filed a false and misleading Schedule 13(d) statement with the Securities and Exchange Commission on January 18, 1984 by stating that their purchase of Texaco common stock was simply for investment purposes. Plaintiff further alleges that the two amendments to the Schedule 13(d) filed by the Bass defendants—executed on January 30 and February 23, 1984, in essence representing that there had been "no material change" in the filer's purpose—were also false and misleading because, according to plaintiff, the true purpose of defendants' purchases was to either acquire Texaco or to sell their stock to Texaco or to a third party at a premium over market price. Plaintiff contends that the Bass defendants had a duty, and failed to meet its duty, to disclose certain discussions with Texaco concerning plans to sell Texaco stock, and that their reasons for nondisclosure was to artificially inflate the

---

4. Seagoing also attacks the fairness of the settlement of the Delaware class action suit. Although this court recognizes that there may be some merit to such assertion, having reached its decision on other grounds, there is no need to determine that issue at this time.

price of Texaco stock in order to obtain a higher price for their shares from Texaco. Plaintiff claims it suffered damages because it purchased Texaco stock at an allegedly artificially inflated price.

On May 3, 1984, the Bass defendants moved pursuant to Rules 9(b) and 12(b)(6) for an order dismissing the complaint or in the alternative, for an order transferring venue to the Northern District of Texas. The Bass defendants argue, *inter alia*, that 1) no private cause of action for damages exists under Section 13(d) of the Exchange Act; 2) plaintiff failed to allege facts sufficient to state a claim under Section 9(a)(2) of the Act; 3) plaintiff failed to allege facts sufficient to show that the Bass Defendants had issued any misstatement and, in addition, failed to plead certain essential elements of Section 10(b)—misstatement, reliance, causation, and scienter—; 4) plaintiff failed to plead its Section 10(b) claim with the particularity required by Fed.R.Civ.P. 9(b); 5) plaintiff's assertion of derivative claims on behalf of Texaco must be dismissed for failure to comply with Fed.R.Civ.P. 23.1 requiring plaintiff to make a demand on the Texaco Board of Directors.

While the Bass defendants' motion to dismiss was under consideration by the court, numerous derivative actions arising out of the same transaction described above were consolidated in Delaware. After extensive discovery, these actions were settled. In November 1984, Seagoing was given access to all of the discovery materials produced in the Delaware actions. On April 2, 1985, Seagoing moved this court for leave to file an amended complaint, based on what Seagoing claims to be recently obtained material evidence regarding events surrounding the Bass defendants' purchases of Texaco stock.

Seagoing asserts that it has evidence relating to conversations the Bass defendants allegedly had with Texaco's senior officers regarding the defendants' ownership of Texaco stock, as well as evidence relating to negotiations for sale of such stock before and after the filings of the Schedule 13(d) statements and amendments (including information about the time, place [5], and substance of specific conversations and negotiations which form the basis of Seagoing's allegations of fraud).

According to Seagoing, the new evidence also establishes that although defendant Texaco was aware that the 13(d) and amendments thereto were false and misleading, Texaco nonetheless issued a press release on January 19, 1984 which failed to disclose the Bass defendants' true intent to sell their stock to Texaco at a price inflated by the Basses' own false and misleading 13(d) filings. Thus, Seagoing contends that Texaco aided and abetted the Bass defendants' violations of the federal securities laws, and seeks to add as defendants Texaco's Directors during the period at issue.

### B. Discussion

As the Bass defendants themselves acknowledge, leave to amend is usually freely granted under Fed.R.Civ.P. 15. In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court declared that in accordance with Rule 15(a), "leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." The Court added further that:

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to

---

**5.** Seagoing asserts that because all meetings occurred within the Southern District of New York at Texaco's headquarters in White Plains or at defendant Sid R. Bass's apartment in the Hotel Carylyle in Manhattan, the action should be maintained, as it is now, in this district, rather than transferred, as requested by defendants, to Texas.

amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id.*

■ There being no showing of undue prejudice to defendants or of dilatory or bad faith purpose in plaintiff's leave to amend, and in accordance with the spirit of Rule 15(a), *see* Moore's Federal Practice ¶ 15.08[2]–[3], the court hereby grants plaintiff's motion to amend its complaint.

## V. *PLAINTIFF'S ALLEGED FAILURE TO STATE A CLAIM FOR RELIEF*

The Bass defendants set forth the following theories for their motion to dismiss plaintiff's amended complaint: 1) there is no private right of action for damages under Section 13(d) of the Exchange Act; 2) the elements of a cause of action under Section 10(b) of the Exchange Act have not been sufficiently alleged; 3) fraud was not alleged with the degree of particularity required by Rule 9(b); 4) Section 9(a)(2) is inapposite to the facts as alleged in the complaint.

Texaco's opposition to plaintiff's motion to amend the complaint rests primarily on its argument that Texaco had no legal duty to disclose its buy back discussions with the Bass defendants. Texaco contends that no such duty arises until it reached a definitive agreement with the Bass defendants, for example regarding the price and structure of the transaction. Moreover, Texaco further argues that its January 19, 1984 press release was in no way false and misleading. According to Texaco, it had no duty to disclose what its chairman allegedly learned in his January 11 telephone conversation with Sid Bass, that the Bass defendants intended to sell back their Texaco shares to Texaco, because as Texaco puts it, no duty exists to disclose or update a disclosure if the underlying information involves an "inchoate corporate transaction."

### A. Section 13(d)

■ As the Bass defendants argue, there is no private cause of action for damages under Section 13(d). *See e.g., Sanders v. Thrall Car Mfg. Co.,* 582 F.Supp. 945 (S.D.N.Y.1983), *aff'd,* 730 F.2d 910 (2d Cir. 1984) (per curiam); *Myers v. American Leisure Time Enterprises, Inc.,* 402 F.Supp. 213 (S.D.N.Y.1975), *aff'd without opinion,* 538 F.2d 312 (2d Cir.1976).

Section 13(d), however, "was intended to alert investors to potential changes in corporate control so that they could properly evaluate the company in which they had invested or were investing. Disclosure which is false or misleading subverts this purpose." *GAF Corp. v. Milstein,* 453 F.2d 709, 720 (2d Cir.1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972). Hence, a section 13(d) false filing would violate "one of the antifraud provisions, for example, section 10(b)." *Id.* The *Milstein* court thus remarked that where a 13(d) violation also involves "a purchase or sale of securities, section 10(b) will apply." *Id.* & n. 22.

In *Stromfeld v. Great Atlantic & Pacific Tea Co.,* 484 F.Supp. 1264, 1269 (S.D.N.Y.1980), the court, while recognizing that there is no implied right of action for damages under section 13(d), found that "plaintiffs aggrieved by S.E.C. filings containing false and misleading statements" and unable to meet the standing requirement of section 18(a) creating a private remedy for such false and misleading statements could rely on section 10(b) of the Exchange Act for their cause of action. Similarly, in *Ross v. A.H. Robins Co.,* 607 F.2d 545 (2d Cir. 1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), the Second Circuit concluded that although "Section 18 expressly creates a private remedy for 'false or misleading' statements contained in 'any application, report or document' filed with the S.E.C. pursuant to the 1934 Act in favor of any person 'who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement,' " *id.* at 551, section 18 is not the exclusive basis upon which liability for misstatements in filed

reports can be found. The Court concluded that "even as to those documents filed with the S.E.C., plaintiffs may seek to prosecute their claim under § 10(b) and Rule 10b–5." *Id.* at 556.

■ Thus, even though plaintiff is foreclosed from asserting a private cause of action for damages under section 13(d), and even though plaintiff has not asserted a similar private action under section 18, the court finds that this action can be maintained under section 10(b), provided that the allegations are found to be sufficient to establish the essential elements of a section 10(b) claim.

**B. Section 10(b)**

The Bass defendants maintain that Seagoing has failed to sufficiently plead a section 10(b) action, and that the facts alleged by plaintiff do not establish any 10(b) violation. Accordingly, the Bass defendants seek dismissal of the section 10(b) claim brought by Seagoing.

There are five requisite elements in proving a violation of section 10(b):

1) use of the mail or interstate commerce;

2) material misrepresentation or omission of a material fact;

3) scienter (intent to deceive or defraud);

4) reliance by plaintiff on defendant's misrepresentation or omission;

5) damages sustained by plaintiff.

*See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380–81, 47 L.Ed.2d 668 (1976); *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 378–81 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Weitzman v. Stein*, 436 F.Supp. 895, 902 (S.D.N.Y.1977).

### 1. *Material Misstatement and Omission*

The Basses contend that Seagoing's complaint contains conclusory allegations regarding the defendants' allegedly false and misleading 13(d) filings, and that the complaint therefore fails to allege facts to support such allegations. In their defense, the Basses reply that there was simply no misrepresentation of any kind in their 13(d) filings, that is, that their initial filing on January 18, 1984 and subsequent amendments thereto, explaining that the stock purchase was for investment, comported with their final decision to resell their stock at some future time for a profit. In other words, the Basses' sale of their stock was consistent with their stated intentions. They said in their filings that they would hold their Texaco stock as an investment, meaning to possibly buy more Texaco stock or possibly sell some or all of such stock, and they ended up doing what they said they would do—sell all of their stock. Therefore, no misrepresentation was perpetrated and hence, no cause of action under 10(b) ever arose.

The court first notes that in a motion to dismiss for failure to state a claim (by Notice of Motion dated May 3, 1984, the Bass defendants moved pursuant to Rule 12(b)(6) for an order dismissing the complaint), the court must accept as true plaintiff's allegations of fact. *See e.g., Miree v. De Kalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the court should deny a motion to dismiss for failure to state a claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Plaintiff's complaint alleges that the Bass defendants filed a false and misleading 13(d) statement on January 18. The filing stated that the defendants were buying Texaco stock for investment when, according to plaintiff, defendants' intent at the time of filing was to devise a "greenmail" course of action. Seagoing submits that in May 1982, when the Bass defendants owned slightly less than 5% of Texaco's common stock, Sid Bass, acting on behalf of the Bass defendants, met with Texaco's Chief Executive Officer and the Chairman of its Board of directors, John McKinley, in McKinley's White Plains office to discuss a buy-back deal. The two allegedly met again in September 1982 when substantially the same plan was discussed, including, as suggested by Bass, a

buy-back by Texaco through a tender offer. Seagoing further asserts that such discussions continued whereby Sid Bass persisted in coming up with various proposals and plans, orally—in person and by phone—, as well as in writing.

On November 22, 1983, Sid Bass allegedly met with McKinley, as well as with Texaco's Vice Chairman, its President, and Senior Vice President in White Plains, and suggested that he, Sid Bass, be allowed to engage in direct discussions with Texaco's financial officers regarding the Basses' repurchase proposal. Seagoing claims that similar discussions continued on November 29, 1983, December 22, 1983, and January 2, 1984. Plaintiff points to a written repurchase plan laid out on three legal pad sheets, apparently now lost, and to a 12–page memorandum specifying various detailed calculations sent by Sid Bass to a Texaco Senior Vice President.

According to Seagoing, the Basses' plan to drive up the price of Texaco stock by means such as a tender offer by Texaco was interrupted by an intervening event—the Getty acquisition by Texaco on January 6, 1984. The Basses then realized that Texaco would no longer be willing to entertain an open market buy-back plan as proposed by the Basses because such a tender offer by Texaco would naturally result in a significant rise in the price of Texaco's stock, thereby causing Texaco to incur heavier costs in its attempt to buy back its own stock. To ensure that the price for Texaco's stock would nonetheless be driven up, Seagoing claims that the Basses began to devise another method other than a Texaco tender offer. According to Seagoing, in order to accelerate an increase in the price of Texaco's stock before reselling it back to Texaco, the Basses filed a misleading 13(d) statement stating that their sole purpose in purchasing Texaco stock was for investment. Against this dramatic backdrop of multiple previous negotiations for a buy back by Texaco of the Basses' Texaco stock, Seagoing argues that the Basses never intended to be mere passive investors in Texaco, and thus, their 13(d) statements to such an effect were false and misleading. Seagoing maintains instead that the Bass defendants anticipated all along that their 13(d) filing on January 18, 1984 would generate a market rise in price of Texaco stock. As support for its contention, Seagoing points to Sid Bass's own statement on January 11, 1984 in a phone conversation with Texaco's Chairman, McKinley, whereby McKinley asked Bass to cease from further buying Texaco stock until a 13(d) filing had been made. According to Seagoing, Sid Bass's reply was that because a filing would result in a rise in price, the Basses intended to continue buying during the Interim Filing Period before such an increase could occur. During this same conversation, Sid Bass allegedly proposed again to McKinley the Basses' intent to sell their Texaco holdings back to Texaco. The Basses' first 13(d) filing on January 18, 1984, then, according to Seagoing, was clearly false and misleading.

On February 22, 1984, with Texaco awaiting the pending approval of the Texaco–Getty merger, Sid Bass allegedly met with McKinley in McKinley's office and threatened that the Basses would launch a larger tender for Texaco stock, possibly in conjunction with other third parties, such as Pennzoil, which had contacted them for a joint tender. Discussions were allegedly then held regarding the exchange of Texaco assets, such as an insurance company, a sports cable network, and certain coal reserves, for the shares the Basses already held. Documents pertaining to the insurance company were allegedly given to Sid Bass, and on February 29, 1984, a written proposal detailing specific assets and entities to be exchanged was allegedly presented to McKinley at Texaco headquarters. Further discussions allegedly ensued on March 5, 1984 at the Carlyle Hotel in New York City where Sid Bass and McKinley deliberated on an outright purchase by Texaco for the Basses' shares. Hence, Seagoing claims, not only was the initial 13(d) filing on January 18, 1984 false and misleading, but the subsequent amendments on January 30 and February 23, 1984 were equally false and misleading as well. *See e.g., Ross v. A.H. Robins Co.,* 465 F.Supp. 904, 908 (S.D.N.Y.1979), *rev'd*

*on other grounds,* 607 F.2d 545 (2d Cir. 1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) ("there is a duty to correct or revise a prior statement which was accurate when made but which has become misleading due to subsequent events."); *see also Telvest, Inc. v. Bradshaw,* 697 F.2d 576, 581 (4th Cir.1983) ("under the federal securities law any 'perceptible desire to influence substantially the issuer's operations' regardless of a 'fixed plan' to acquire control must be disclosed.") (quoting *Dan River, Inc. v. Unitex Ltd.,* 624 F.2d 1216, 1226 n. 9 (4th Cir.1980), *cert. denied* 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981)).

■ A reading of the complaint where all ambiguities are to be resolved in favor of the pleading, as required in a motion to dismiss for failure to state a claim, leaves the court with no other choice here but to deny defendants' motion to dismiss the amended complaint on the basis of failure to plead misrepresentation. The question is not whether plaintiff will ultimately prevail on this point, but whether plaintiff has stated facts sufficient to meet this particular 10(b) requirement. To automatically adopt the Bass defendants' contention, that it ended up doing what it said in its 13(d) filings it would do, would lead to a potentially perverse result. Any "greenmailer" could insulate himself from the securities laws by filing a 13(d) statement saying that his purchase of certain stocks was solely for investment purposes, that he accordingly may either buy more or sell some or all of shares already held and, accordingly, escape the reach of the securities laws simply by doing what he may have intended to do all along—sell back his shares to the issuing company. Surely, one cannot be allowed to erect a safe haven from charges of fraud by going ahead with an ultimate perpetration of such fraud. The crux, therefore, is not merely doing what one's 13(d) statement said one would do. Rather, it is what one's intent was at the time one made the 13(d) filing. If the intent was to coerce the issuing company into buying back its shares, it should do the filer no good to prepare in advance his defensive posture by stating in his 13(d) filing that he

may, among his many investment options, sell some or all of his shares, in the hope that the 13(d) misstatement would later protect him from a "green mail" charge. Such a result would circumvent the purposes behind Section 10(b), which was not simply "intended as a specification of particular acts or practices which constitute fraud, but rather [was] designed to encompass the infinite variety of devices by which undue advantage may be taken of investors and others." *In the Matter of Cady, Roberts & Co.,* 40 SEC 907 (1961), *cited in* L. Loss, *Fundamentals of Securities Regulation, supra* n. 1, at 742.

The Bass defendants further claim that plaintiff's complaint, alleging omission in failing to disclose that they were in fact engaged in discussions with Texaco concerning a Texaco repurchase deal, must fail as well. Because of the fluid and ever-changing nature of such discussions, and because there had been no "agreement in principle" *Staffin v. Greenberg,* 672 F.2d 1196, 1207 (3d Cir.1982), defendants contend that the negotiations had not yet reached the stage of materiality sufficient to trigger a duty to disclose. For the parties to have reached an "agreement in principle," defendants argue, they must have at least agreed on the price term. And since plaintiff's complaint does not allege that the parties here had reached a repurchase agreement prior to February 29, 1984, when plaintiff allegedly purchased its Texaco stock, or prior to March 5, 1984, when the class period terminates, defendants believe that there had been no "agreement in principle" prior to any of the 13(d) filings, hence no duty to disclose, hence no omission, and hence no section 10(b) violation.

Regardless of whether or not plaintiff will ultimately prevail on its claim of omission, the court believes that the flexible standard adopted by the Supreme Court in *Basic v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 [1987–1988 Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,645 (1988) in essence overrules the "agreement in principle" cases relied upon by defendants, and mandates lower courts to examine each

case on its own facts and circumstances to determine what constitutes materiality. "Materiality depends on the significance the reasonable investor would place on the witheld or misrepresented information." *Id.* —— U.S. at ——, 108 S.Ct. at 988, Fed. Sec.L.Rep. (CCH) at 97,948. Thus the mere fact that Texaco and the Bass defendants had not formally agreed on a repurchase deal before any 13(d) filing was made does not in and of itself means that any and all negotiations between the parties concerning such resale were immaterial as a matter of law. Additionally, regardless of whether or not the negotiations were material and whether or not a duty to disclose such negotiations ever arose, "a duty to speak the full truth arises when a defendant undertakes to say anything." *First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1317 (5th Cir.1977), *rehearing denied,* 564 F.2d 416 (5th Cir.1977), *cert. denied sub nom., Walter E. Heller & Co. v. First Virginia Bankshares,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978). The jury could reasonably find that failure to disclose those negotiations and failure to amend the initial 13(d) filings constitute a failure to reveal the full truth.

Having pleaded in its complaint, based on specific facts as alleged by plaintiff, that the Basses' 13(d) filings were in contravention of their real intentions to have Texaco repurchase their Texaco shares at a premium over market price, plaintiff has, in the court's opinion, sufficiently pleaded material misrepresentation as required under section 10(b) to survive defendants' motion to dismiss.

## 2. *Scienter*

■ It is settled law that in section 10(b) actions, the plaintiff must plead that the defendant acted with scienter in making a material misrepresentation or omission. *See e.g. Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1380–81, 47 L.Ed.2d 668 (1976); *Ross v. A.H. Robins, supra,* 607 F.2d at 555–56. Defendants challenge the adequacy of plaintiff's allegation of scienter because according to the defendants, the allegations were made in conclusory fashion.

Yet, whether or not plaintiff will be ultimately successful in making out its claim, the fact is that plaintiff's complaint does allege that the misstatement and omission in defendants' 13(d) filings were designed with the intent to manipulate the acceleration in the market price of Texaco stock, to defraud investors in the market so as to achieve an inflated price for the resale of defendants' stock to Texaco. In paragraph 6 of its amended complaint, plaintiff claims that the Basses' 13(d) filings containing misstatements and omissions were "intended to implement an unlawful plan or scheme ... to drive up the price of Texaco stock by large purchases and incomplete public disclosure with respect thereto, so as to enable the Bass Defendants to effect a quick sale of their Texaco shares at a premium...." Plaintiff further charges that the "Bass Defendants intended to make a profit on the purchase of such shares," (Paragraph 7(a), Amended Complaint), that "they intended from the start, to devise some means of accelerating a rise in the market price ...," (*id.*) and that the Basses' 13(d) statements "were part of an intentional scheme to defraud members of the investing public." (*Id.* at paragraph 21). Where plaintiff made numerous charges, based on specific facts as alleged by plaintiff, of defendants' intent to deceive and defraud, the court does not believe that it can be fairly said that plaintiff's charges of misrepresentation and omission were mere conclusory allegations insufficient to a pleading of scienter.

## 3. *Reliance*

The Bass defendants attack the sufficiency of plaintiff's pleading regarding another essential 10(b) element—reliance. According to the Basses, the absence in plaintiff's complaint of any allegation that plaintiff had in fact read the Basses' 13(d) filings, or relied on such filings, constitute a serious defect in plaintiff's complaint.

■ Yet, in contrast to a section 18 claim, 10(b) actions do not require direct reliance by plaintiff on defendants' misstatements when it purchased the stock. *Ross v. A.H. Robins, supra,* 607 F.2d at 553. Moreover, in cases consisting of "a

failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor *might* have considered them important in the making of his decision." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). "In a § 10(b) action ..., reliance is presumed once the materiality of an omission is established." *Ross v. A.H. Robins, supra,* 607 F.2d at 553.

The Second Circuit has applied the *Ute* presumption rule in cases other than total omission, that is, cases involving some disclosure which "was true as far as it went but ... neglected to add" or disclose other material developments. *Herbst v. International Telephone & Telegraph Corp.*, 495 F.2d 1308, 1316 (2d Cir.1974). The court also held that it would be appropriate to invoke the *Ute* test in cases involving disclosure of half-truths. *Chris–Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 364–65, 377 (2d Cir), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). The court found that certain letters sent to shareholders during the pendency of a tender offer were misleading because characterizations contained in the letters were imprecise and mischaracterized the nature of the offer and the fairness of the price. The court also found that a subsequent press release disclosing that a purchase deal with another offeror had been agreed upon was equally misleading because the release omitted a key provision. Although "the agreement was not a 'sham,'" *id.* at 365, the court nonetheless held that failure to include the key provision omitted in the press release and in subsequent letters constituted a material omission. *Id.*

In deciding to apply the *Ute* presumption to the case, the Second Circuit noted that "[w]here the transaction is accomplished through impersonal dealings, such as on a stock exchange, or for some other reason the factors that influenced the parties are not readily apparent, the decisions have discussed liability in terms of the 'materiality' of the misrepresentation. [Citations omitted]. This constructive reliance principle is particularly appropriate in class actions where proof of reliance by numerous class members would be impracticable." [Citation omitted]. *Id.* at 374. The court, accordingly, presumed reliance and found that but for the misrepresentations in the letters and press release, the shareholders would not have accepted the alternate offer presented by the second offeror.

Reliance is also presumed when "the material misrepresentation affected the price of stock traded on the open market." *Ross v. A.H. Robins, supra,* 607 F.2d at 553, *citing Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir.1975); *Chris–Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 374 (2d Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). Seagoing alleged that it "relied upon the integrity of the market for Texaco stock." (Amended complaint, ¶ 26). In cases involving a "fraud on the market" theory where a plaintiff alleges dissemination by defendant of false information into the market, courts recognize that "[p]roving reliance is necessarily difficult where the fraud has affected the market and damaged the plaintiff only through its effect on the market." *Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir.1981), *vacated as moot sub. nom Price Waterhouse v. Panzirer,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982). Hence, direct reliance is not a prerequisite because it is presumed that "an investor relies generally on the supposition that the market price is validly set and that no unsuspected fraud has affected the price." *Id.*

Where Seagoing has alleged numerous facts to establish that the Basses 13(d) filings were false and misleading, that the market price of Texaco stock was artificially inflated after the 13(d) filings, and where it further alleges that there was a concomitant drop in such price after Texaco's announcement of the repurchase agreement of the Basses' stock, plaintiff has sufficiently pleaded its fraud on the market theory. Moreover, as discussed above, Seagoing also pointed to various events prior to the Basses' January 18, 1984 13(d)

filing to negate the Basses' stated purpose in their filing that their Texaco purchases were for mere investment. Such allegations of omissions or half-truths are sufficient to invoke the *Ute* presumption and to withstand defendants' motion for dismissal.

### 4. *Loss Causation*

Defendants maintain that a "successful § 10(b) action requires proof of a causal relationship between defendants' misrepresentations or omissions and the plaintiff's losses." (Defendants' Memorandum in Support of Their Motion to Dismiss the Amended Complaint or, in the Alternative, to Stay the Action, or for Change of Venue, p. 34). Again, the point is not whether plaintiff will be ultimately successful in its 10(b) action, but whether or not it has adequately pleaded certain 10(b) elements such as causation.

"The requirement of 'loss causation' derives from the common law tort concept of 'proximate causation.'" *Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.*, 801 F.2d 13, 20 (2d Cir.1986), *cert. denied* sub nom. *Arthur Andersen & Co. v. Manufacturers Hanover Trust Co.*, 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). "The generalization is that only the loss that might reasonably be expected to result from action or inaction in reliance on a fraudulent misrepresentation is legally, that is, proximately, caused by the misrepresentation." *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 708 (2d Cir.1980), *cert. denied* sub nom. *Wood Walker & Co. v. Marbury Management, Inc.*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). Loss causation "in effect requires that the damage complained of be one of the foreseeable consequences of the misrepresentation." *Id.*

■ In its complaint, Seagoing made numerous allegations—that prior to the Basses 13(d) filings on January 18, 1984, commencing in May 1982, the Basses initiated discussions with Texaco's chairman and other directors regarding a buy-back plan by Texaco of the stock held by the Basses. The complaint further alleges that despite their true intention to have Texaco buy back its stock at a "price above the market price," (amended complaint, ¶ 7(c)), as reflected in their prior negotiations with Texaco, the Basses stated in their 13(d) filings only that their purchases were for investment purposes. Seagoing claims that if the Basses had revealed their true intention, to effect a Texaco repurchase, the price of Texaco stock would not have artificially risen. Plaintiff's purchase of Texaco stock was made with the belief that the market price had not been manipulated, and that if it had known of such manipulation, it would not have purchased such stock. Seagoing alleges damages sustained as a result of its purchase of such stock at the artifically inflated price and the subsequent drop in price of Texaco stock following the announcement of the repurchase agreement.

Regardless of whether or not plaintiff can prove by a preponderance of the evidence each and every one of its claims, the question of loss, if any, caused by defendants' alleged omissions and misrepresentations is a question of fact not appropriate, under these circumstances, for resolution in a motion for dismissal.

### C. Rule 9(b) of the Federal Rules of Civil Procedure

Defendants move to dismiss Seagoing's complaint on the ground that the complaint fails to allege fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

■ Defendants charge that where, as here, allegations are made solely upon "information and belief," they fail to satisfy the requirements of Rule 9(b). However, it is settled in this Circuit that matters within the adverse parties' knowledge may be pleaded upon information and belief, if accompanied by a statement of facts upon which the belief is founded. *See e.g., Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374 (2d Cir.1974), *cert. denied*, 421

U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

The complaint made specific allegations delineating the context in which the eventual buy-back agreement was struck, from the alleged initial discussions between Texaco and the Bass defendants in 1982 to the March 1984 announcement of the repurchase deal. Negotiations with various Texaco officials were traced and pleaded, together with the particular subject matter underlying the negotiations, and the dates and place such negotiations allegedly took place. Plaintiff alleges that defendants made material misstatements in their 13(d) filings on January 18, 1984 and January 30 as well as February 23, 1984 amendments thereto. As specifically pleaded by plaintiff, the stated purpose in such statements —that the purchases were for passive investment purposes—misrepresented defendants' true intention to artifically inflate the price of Texaco stock to achieve optimum profit for defendants in Texaco's buy-back agreement with them.

■■ Plaintiff has pleaded all the elements of fraud with sufficient particularity to survive defendants' motion to dismiss under Rule 9(b). Claims of misrepresentation and omission were pleaded, along with allegations of specific acts or omission upon which such claims rest, that is, prior to and during the time that defendants filed their 13(d) statements representing themselves as passive investors, defendants were actively engaged in a buy-back plan with Texaco; intent was pleaded, specifically intent on defendants' part to have the investing public rely on their misstatements in order to drive up Texaco stock; reliance by plaintiff in its purchase on the integrity of the market, and resulting damage caused by defendants' misstatement.

Rule 9(b) serves to assure a defendant of "fair notice of what the plaintiff's claim is

and the grounds upon which it rests." *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir.1971). The pleadings in the complaint of the instant case adequately informs defendants of the charges made against them.

Defendants additionally urge the court to dismiss the complaint pursuant to Rule 9(b) for another reason—that the complaint fails to specify the role of each defendant with respect to each allegation of fraudulent conduct.

■■ The factual support for Seagoing's allegation of misstatement rests primarily on its claims that the Bass defendants had been actively seeking to have Texaco buy back their stock through one means or another. Plaintiff refers to various propositions, oral and written, initiated by Sid Bass towards that effect, communicated to John McKinley, Texaco's chairman and chief executive officer; James Kinnear, Texaco's Vice Chairman; Alfred DeCrane, Texaco's President; Robert McCay, Texaco's Senior Vice President; and Richard Brinkman, Texaco's treasurer (amended complaint, ¶¶ 7(d), 7(e), 7(f)). Plaintiff further refers to specific calculations concerning the repurchase proposal contained on three legal pad sheets and on a 12–page memorandum sent by Sid Bass to Robert McCay, Texaco's Senior Vice President (*id.*, ¶ 7(f)).[6]

Texaco defendants with whom Sid Bass had prior contact were thus specified by name. Plaintiff alleges that defendant Texaco aided and abetted the Bass defendants in the complaints alleged, that Texaco knew or should have known that the Basses' statements in their 13(d) filings were false, and that despite such supposed knowledge, Texaco issued a press release on January 19, 1984 which misleadingly gave the impression that the Bass defendants were mere passive investors.[7] Plain-

---

**6.** The documents referred to by plaintiff are more likely than not documents "in defendants' possession or within defendants' exclusive knowledge." *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 910 (S.D.N.Y.1983). As stated, where plaintiff pleads to matters within the opposing party's knowledge, plaintiff is entitled to plead on information and belief. *Id.*

**7.** Texaco claims that it had no legal duty to disclose its buy back discussions with the Bass defendants, at least until it had reached a definitive agreement with the Basses. But as this court stated in *Kamerman v. Steinberg*, 123 F.R. D. 66 [1988 Transfer Binder], Fed.Sec.L.Rep. (CCH), ¶ 94,073 (October 27, 1988), "in *Basic v. Levinson*, [citation omitted], the Supreme Court

tiff thereby "specifically states facts and describes events which give rise to a strong inference that the defendants had the knowledge which plaintiff claims they did. This is sufficient pleading under Rule 9(b)." *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 910 (S.D.N.Y.1983).

Moreover, the Texaco defendants are "all insiders ... and numerous courts have held that the conduct of such individuals need not be specified if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer." *Pellman v. Cinerama, Inc.*, 503 F.Supp. 107, 111 (S.D.N.Y. 1980).

With respect to the Bass defendants, the court observes that where the amended complaint charges that the defendants "acted as a group with respect to the allegedly misleading filings," *Management Assistance Inc. v. Edelman*, 584 F.Supp. 1016, 1018 (S.D.N.Y.1984), it satisfies the requirements of Rule 9(b). "Plaintiff's claim of joint responsibility ..., therefore, ... is not a 'bald assertion of joint participation.' " *Id.* (quoting *Weinberger v. Kendrick*, 432 F.Supp. 316, 321 (S.D.N.Y.1977)). Defendants' motion to dismiss for failure to plead fraud with particularity is denied.

### D. Section 9(a)(2)

The Bass defendants' final objection is that plaintiff's complaint fails to allege facts sufficient to make out a section 9(a)(2) claim.

Section 9(a)(2) of the Securities Exchange Act of 1934, 15 U.S.C. § 78i(a)(2), makes it unlawful to:

> effect, alone or with one or more other persons, a series of transactions in any security registered on a national securities exchange creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

According to defendants, section 9(a)(2)'s narrowly tailored provisions do not encompass the sort of activities alleged in the complaint. Defendants claim that the purpose of 9(a)(2) was to outlaw practices intended to mislead investors by artificially manipulating market activities and deceiving them into believing that activities in a security reflected genuine demand rather than a mere mirage; accordingly, defendants assert, they are exempt from the reach of 9(a)(2) because their purchases were simply for investment without any intention of creating a false impression of demand, and because plaintiff's complaint contains no allegation that they were engaged in rigging an artificial demand for Texaco stock for the purpose of manipulating its price.

It is certainly true that section 9(a)(2) does not punish large-scale buying which in and of itself results in an increase in the price of a security. *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir.1969), *cert. denied* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970). The question, however, is the purpose and motive behind such extensive acquisition. And such "requisite purpose and willfulness is normally inferred from the circumstances of the case." *Id.* "Since it is impossible to probe into the depths of a man's mind, it is necessary in the usual case (that is, absent an admission) that the finding of manipulative purpose be based on inferences drawn from circumstantial evidence." *Federal Corp.*, 25 SEC 227, 230 (1947), *quoted in* L. Loss, *Fundamentals of Securities Regulation*, *supra* n. 1, at 855.

---

declined to adopt a brightline test for when corporations must disclose preliminary merger negotiations to the investing public in order to avoid liability under Section 10(b) of the Act and Rule 10b–5. Instead, the Court opted for a case-by-case approach in which materiality for purposes of those provisions depends on the facts and circumstances of each individual situation." *Id.* at 91,028. "The case-by-case approach adopted in *Basic* coupled with its emphasis on full disclosure in securities transactions leads us to the conclusion that this particular question of materiality can and should go to a jury." *Id.* at 91,029. A jury could reasonably conclude, based on facts adduced at trial, that Texaco was indeed fully apprised of the Basses' true intention to greenmail the corporation and, indeed, that Texaco officials aided and abetted the Basses in their plan in order to preserve and protect their positions in the corporation.

As one commentator has put it, "a *motive* to manipulate, when joined with the requisite series of transactions, *prima facie* establishes the manipulative *purpose* and shifts to the accused the burden of going forward with the evidence." L. Loss, *Fundamentals of Securities Regulation, supra* n. 1, at 855. It does defendants no good to bypass the core allegation of manipulative purpose by a circuitous and conclusory explanation that section 9(a)(2) does not condemn large-scale purchases of securities for investment purposes. *See e.g., Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Co.*, 606 F.2d 602, 616 (5th Cir. 1979), *reh'g denied,* 610 F.2d 818 (5th Cir. 1980), *cert. denied,* 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980) (In a shareholders' derivative action alleging, *inter alia* that defendants carried out a stock repurchase program to retain their position in the corporation by driving up the price of the corporation's shares with the purpose of discouraging others from attempting to gain control of the corporation, the Court found that there was a material fact issue as to whether the stock repurchase program was a manipulative device designed to artificially boost the price of shares purchased by the corporation, rendering summary judgment on that issue inappropriate. Although the defendants submitted affidavits and minutes from the Board of Directors' meetings to bolster their defense that the repurchase plan was indeed good investment, the Court found that a genuine issue of fact remains because the underlying "issues involve subjective factors such as the knowledge available to the defendants and their intentions in pursuing the program.").

Contrary to defendants' objection that there is no allegation in the complaint that they were engaged in price manipulation, the complaint does indeed assert that the Bass defendants, aided and abetted by Texaco, were involved in "an unlawful plan or scheme ... to drive up the price of Texaco stock by large purchases and incomplete disclosure with respect thereto, so as to enable the Bass Defendants to effect a quick sale of their Texaco shares at a premium over an artificially inflated market price, to Texaco, itself, or to a third party or parties." (Amended complaint, ¶ 6). Whether or not plaintiff's allegations will be proven at trial, and whether or not evidence, if any, will suffice to make out plaintiff's assertion of price manipulation in contravention of section 9(a)(2), the court concludes, for reasons discussed above, that at this junction, plaintiff has stated a claim sufficiently tenable to withstand defendants' motion to dismiss.

## VI. *CHANGE OF VENUE*

Defendants have moved to transfer the instant action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The relevant criteria in deciding a § 1404(a) motion include the following: 1) convenience of the parties and witnesses; 2) access to proof; 3) other practical problems making trial of a case expeditious and inexpensive; 4) availability of process to compel attendance of unwilling witnesses; 5) the interest of justice. *Y4 Design, Ltd. v. Regensteiner Publishing Enterprises,* 428 F.Supp. 1067, 1068–69 (S.D.N.Y.1977) (citation omitted).

Defendants argue that the addition of Texaco and its directors as defendants was done by plaintiff for the mere purpose of defeating defendants' motion to transfer venue. According to defendants, plaintiff seeks to add the Texaco directors, who work or reside in the New York City area, as parties to this action in order to circumvent potential transfer of venue to the Northern District of Texas, since all but one of the original defendants, the Basses, reside, work, or maintain their business there. The Bass defendants contend in essence that they are the "real" defendants, and that transfer of venue would greatly serve their convenience.

Based on the above scant allegation, the court cannot declare, as urged by

defendants, that plaintiff's addition of the Texaco directors as defendants is wholly and patently without any basis. Plaintiff has alleged that certain Texaco officers had knowledge, or should have had knowledge, that the Basses' 13(d) statements were false and misleading, and that the officers nonetheless aided and abetted the Basses in their "greenmailing" scheme against the corporation. Whatever defense the Texaco directors may have or may assert, whether it be one of statutory defense of "good faith" or any other, the court cannot say that the directors are merely sham defendants added for the sole purpose of defeating a venue motion.

Defendants also claim that documents related to the filing of the 13(d) statements are located in Texas, as well as the Bass defendants and other participants involved in the preparation of such documents. Plaintiff, by contrast, points out that most of the activities occurred in New York, that Texaco is headquartered in White Plains, that its directors who will be called as witnesses are not Texas residents, and that Sid Bass maintains an apartment in New York City.

 As defendants admit, transference of a civil action under section 1404(a) lies in the sound discretion of the district court. The court deems that moving the case now to Texas would only shift the inconvenience from the Bass defendants to Seagoing, a corporation headquartered in Brooklyn, New York. "Where the balance of convenience is in equipoise, plaintiff's choice of forum should not be disturbed." *Ayers v. Arabian American Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y.1983). It is not as though nothing substantial to this case occurred in New York. Plaintiff has alleged, as stated, that the negotiations and discussions between the Bass defendants and Texaco and its directors took place in the New York area. Texaco is headquartered in the New York Metropolitan area, and as plaintiff contends, will have to produce documents for the case.

The burden of showing the desirability of a transfer is on the moving party. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S.

908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). Of course, a "plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Given the totality of facts in the case, the court does not believe that the defendants have sufficiently met their burden to warrant the court's granting their motion to move the case to Texas.

Defendants' motion to transfer venue is denied.

### VII. *CONCLUSION*

For the reasons discussed above, all of defendants' motions are denied. An order *to such effect will follow the opinion.*